**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| ASHLEY MCDANIELS<br>102 SOLAR CIRCLE<br>PARKVILLE, MD 21234<br>(Baltimore County, Maryland)<br><br>*on her own behalf and on behalf of*<br>*all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>WESTLAKE SERVICES, LLC<br>D/B/A WESTLAKE FINANCIAL SERVICES<br>4751 WILSHIRE BLVD., SUITE 100<br>LOS ANGELES, CA 90010<br>Serve on:  The Corporation Trust Inc.<br>351 West Camden Street<br>Baltimore, MD 21201<br><br>THE LAW OFFICES OF WILLIAM R.<br>FELDMAN, P.C.<br>451 HUNGERFORD DRIVE, SUITE 210<br>ROCKVILLE, MD 20850<br>Serve on:  William R. Feldman, Esq.<br>15711 Mahogany Circle, Suite 304<br>Gaithersburg, MD 20878<br><br>Defendants. | CLASS ACTION COMPLAINT<br><br><br><br>Case No. _____ |

## CLASS ACTION COMPLAINT

Plaintiff Ashley McDaniels ("Named Plaintiff" or "McDaniels"), on her own behalf and on behalf of all others similarly situated, through her attorney Cory L. Zajdel, Esq. and Z LAW, LLC, hereby submits this Class Action Complaint against Defendant Westlake Services, LLC d/b/a Westlake Financial Services ("Westlake").  McDaniels also files this Complaint on her own

behalf against Defendant The Law Offices of William R. Feldman, P.C.   For support Named Plaintiff states:

## I.  **PRELIMINARY STATEMENT**

1.      McDaniels institutes this class action against Westlake on her own behalf and on behalf of all others similarly situated for violating statutory, common law and contractual obligations and seeks to recover actual damages, statutory damages, interest, attorney fees, and the costs of this action against Westlake for multiple violations of Maryland's Credit Grantor Closed End Credit Provisions, Md. Code Ann., Comm. Law §§ 12-1001 *et seq.* ("CLEC"), Maryland's Consumer Protection Act, Md. Code Ann., Comm. Law, §§ 13-101 *et seq.* ("CPA") and Maryland Common Law.

2.      Westlake extends secured financing for consumer goods.

3.      Westlake has extended secured financing for consumer goods in Maryland each year from 2005 to the present.

4.      Each year from 2005 to the present, Westlake has extended secured financing to more than fifty borrowers in Maryland through credit contracts electing CLEC as the governing law.

5.      Westlake charged interest at a rate greater than twenty-four percent (24%) in more than fifty consumer goods CLEC loans extended in Maryland from 2005 to the present.

6.      CLEC caps the interest a credit grantor may charge at twenty-four percent (24%).

7.      Through its charging of usurious interest rates to its CLEC credit customers, Westlake has deprived its CLEC customers of valuable rights mandated by Maryland law.

8.      Westlake charged convenience fees while servicing more than fifty consumer goods CLEC loans extended in Maryland from 2005 to the present.

9.      CLEC does not allow for the charging of convenience fees.

10.     By charging its CLEC credit customers convenience fees, Westlake has deprived its CLEC customers of valuable rights mandated by Maryland law.

11.     Each year from 2006 to the present, Westlake repossessed consumer goods originated from credit contracts electing CLEC from more than fifty borrowers.

12.     In the event its customer fails to reinstate the contract or redeem the consumer goods following repossession, Westlake sells the customer's consumer goods and applies the proceeds toward the balance on the customer's credit account.

13.     In most cases, the sum Westlake obtains from the sale of the consumer goods is not sufficient to pay off its customer's credit account, resulting in a deficiency balance.

14.     Westlake's routine business practice is to send its CLEC customers form notices after the repossession of its plan to sell the consumer goods ("pre-sale notice") and form notices of the claimed deficiency ("post-sale notice") after the sale of the consumer goods in which it demands payment.

15.     If a deficiency balance remains on the CLEC credit account after Westlake sells the consumer goods, Westlake pursues collection actions including referring credit accounts to collection attorneys, filing suit against Westlake customers, selling the open credit accounts to debt buyers or referring the credit account to debt collectors.

16.     Through its use of deficient form pre-sale notices, Westlake has deprived its CLEC customers of valuable rights mandated by Maryland law.

17.     Westlake violated Maryland law by: (1) failing to provide the exact location where the property would be sold; (2) failing to provide the exact time and date when the property would be sold; and (3) affirmatively representing to class members that Westlake was

entitled to a deficiency balance, which in fact, class members did not owe and Westlake could not collect.

18.     As a result of Westlake's acts and omissions, Maryland law prohibits Westlake from collecting any alleged deficiency which remains after sale of the repossessed vehicle. Maryland law also enables Named Plaintiff and the Class to seek and recover compensatory damages, statutory penalties, damages and injunctive relief.

19.     Westlake's violations of Maryland law have enriched Westlake unfairly at the expense of Maryland borrowers, a practice this suit seeks to end.

20.     Westlake's repeated charges for usurious interest and convenience fees, as well as the use of deficient form pre-sale notices which omit material information required by Maryland law and which also affirmatively misrepresents required information, makes this case particularly suitable for resolution through a class action lawsuit.

## II.    <u>JURISDICTION</u>

21.     This Court has jurisdiction over this case under 28 U.S.C. §§ 1332, 1441, 1446, 1453, the Class Action Fairness Act of 2005 and 15 U.S.C. § 1692k(d).

22.     Supplemental Jurisdiction for the state law claims arise under 28 U.S.C. § 1367.

23.     Venue in the United States District Court for the District of Maryland (Northern Division) is proper pursuant to 28 U.S.C. § 1391.

24.     Named Plaintiff purchased the consumer goods in the Northern Division.  Named Plaintiff resided in the Northern Division when the consumer goods were purchased.  The consumer goods were repossessed in the Northern Division.  Named Plaintiff currently resides in the Northern Division.  Named Plaintiff was sued in the Maryland state court system in the Northern Division.

III.    **PARTIES**

25.     Plaintiff Ashley McDaniels is a natural person currently residing at 102 Solar Circle, Parkville, MD 21234 (Baltimore County, Maryland).

26.     Defendant Westlake is a California corporation doing business within this state and with its principle place of business located at 4751 Wilshire Blvd., Suite 100, Los Angeles, CA 90010.

27.     Defendant The Law Offices of William R. Feldman, P.C. ("William Feldman") is a professional corporation with a business address of 451 Hungerford Drive, Suite 210, Rockville, MD 20850.

28.     At all times relevant to this Complaint, William Feldman transacted business in the District of Maryland and at other locations throughout Maryland, operating as a law firm, collection agency, as a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and as a "collector" and "person" as those terms are defined by MCDCA, § 14-201(b) and (d).

29.     William Feldman is a "collection agency" as defined by Md. Code Ann., Bus. Reg. § 7-101(c).

IV.    **FACTUAL ALLEGATIONS**

30.     On or about February 19, 2009, McDaniels purchased a 2001 Audi A6 from New Market Used Cars in Baltimore, Maryland.

31.     On or about February 19, 2009 when McDaniels purchased the 2001 Audi A6, McDaniels resided in Baltimore County, Maryland.

32.     McDaniels obtained financing for the purchase of the 2001 Audi A6 through the dealership that sold her the vehicle, New Market Used Cars, which was memorialized in a Retail Installment Sale Contract ("RISC").

33.     The RISC affirmatively elects to be governed under Subtitle 10 of Title 12 of the Commercial Law Article (*i.e.* Maryland's Credit Grantor Closed End Credit Provisions – hereafter "CLEC").

34.     McDaniels purchased the 2001 Audi A6 primarily for personal, family and household purposes.

35.     The RISC by which McDaniels financed her purchase was assigned to Westlake.

36.     Westlake charged a twenty-five percent (25%) interest rate on the RISC to McDaniels.

37.     Westlake accepted the assignment of the credit contract and received payments from McDaniels.

38.     Throughout the life of the CLEC credit account, Westlake credited McDaniels' payments to principal, interest (at a rate of 25%), fees and other charges.

39.     Throughout the life of the CLEC credit account, Westlake charged and collected McDaniels multiple convenience fees.

40.     As part of the February 19, 2009 transaction, Westlake took a lien and security interest on the 2001 Audi A6.

41.     Westlake and/or its agents seized and repossessed the 2001 Audi A6 on or before August 9, 2010.

42.     The 2001 Audi A6 was seized and repossessed in Baltimore, Maryland.

43.     Westlake wrote to McDaniels on August 9, 2010 in a pre-sale notice demanding money and telling her that the 2001 Audi A6 would be sold unless she redeemed by paying any amounts past due under her credit contract.

44.     In the same August 9, 2010 pre-sale notice, Westlake failed to state the location where the 2001 Audi A6 would be sold.

45.     The August 9, 2010 pre-sale notice failed to state the time when the 2001 Audi A6 would be sold.

46.     The August 9, 2010 pre-sale notice failed to state the specific date when the 2001 Audi A6 would be sold.

47.     Westlake sold McDaniels' 2001 Audi A6 after mailing the pre-sale notice.

48.     Westlake took the proceeds from the sale of the 2001 Audi A6 and applied it to McDaniels' credit account to satisfy interest, costs, fees and other charges.

49.     Westlake claimed that money still remained due and owing on the credit account from McDaniels after the 2001 Audi A6 was sold.

50.     Westlake made attempts to collect the claimed outstanding deficiency balance from McDaniels but was unable to collect any money on the alleged outstanding deficiency balance.

51.     Westlake eventually referred McDaniels' claimed outstanding deficiency balance credit account to a law firm and debt collector Defendant William Feldman.

52.     Defendant William Feldman contacted McDaniels and notified her that Westlake was still claiming an outstanding deficiency balance on the CLEC credit account.

53.     Westlake's claimed outstanding deficiency balance included interest, costs, fees and other charges.

54.     On March 9, 2011, Westlake, through its debt collector and law firm Defendant William Feldman, filed a collection action against McDaniels in the District Court of Maryland for Baltimore County attempting to collect the claimed outstanding deficiency balance.

55.     In the Baltimore County collection case, Westlake, through its debt collector and law firm Defendant William Feldman, was attempting to recover a claimed outstanding deficiency balance in the amount of 7,963.34, plus interest at the contractual rate of twenty-five percent (25%) and attorney's fees.

## V.      CLASS ACTION ALLEGATIONS

56.     Named Plaintiff brings this action on behalf of two Classes which consists of:

*Repossession Class*

**All persons whose consumer goods were repossessed by Westlake Services, LLC in connection with a credit contract governed by CLEC.**

*Usury Class*

**All persons who entered into a credit contract governed by CLEC with Westlake Services, LLC and were charged: (1) interest at a rate greater than twenty-four percent (24%); or (2) a convenience fee.**

Excluded from the Classes are those individuals who now are or have ever been executives of Westlake and the spouses, parents, siblings and children of all such individuals.

57.     The Classes, as defined above, are identifiable.  The Named Plaintiff is a member of the Classes.

58.     The Classes consist, at a minimum, of more than fifty borrowers who entered into a CLEC credit contracts directly with or that were assigned to Westlake and is thus so numerous that joinder of all members is clearly impracticable. Fed. R. Civ. P. 23(a)(1).

59.     There are questions of law and fact which are not only common to the Classes but which predominate over any questions affecting only individual Class Members.  Fed. R. Civ. P. 23(a)(2).

60.     The common and predominating questions include, but are not limited to:

(a) Whether Westlake failed to provide pre-sale notices required by and compliant with CLEC § 12-1021(e)(1) and (h)(1) to borrowers whose consumer goods were repossessed;

(b) Whether Westlake failed to provide pre-sale notices required by and compliant with CLEC § 12-1021(e)(3);

(c) Whether Westlake misrepresented in writing to the Class its right to collect funds from members of the Class;

(d)  Whether it is a violation of CLEC to charge a convenience fee in connection with a CLEC loan account;

(e)  Whether it is a violation of CLEC to charge more than a twenty-four percent interest rate in connection with a CLEC loan account;

(f)   Whether Westlake breached the class credit contracts for each Class member by failing to comply with CLEC;

(g)  Whether Westlake assessed, attempted to collect and/or collected deficiency balances from members of the Class that it had no legal right to demand or collect, and for which the Class members were not liable; and

(h) Whether Westlake knowingly violated CLEC provisions and therefore should be required to forfeit three times the amount of interest, fees and other charges collected in excess of those allowed by CLEC;

61.     Claims of Named Plaintiff are typical of the claims of the respective members of the Classes within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of similar facts constituting the wrongful conduct of Westlake.

62.     Plaintiff will fairly and adequately protect the interests of the Classes within the meaning of Fed. R. Civ. P. 23(a)(4).

63.     Plaintiff is committed to vigorously litigating this matter.

64.     Further, Plaintiff has secured counsel experienced in handling consumer class actions and complex consumer litigation.

65.     Neither Plaintiff nor her counsel has any interests which might cause them not to vigorously pursue this claim.

66.     Westlake's actions are generally applicable to the respective Classes as a whole, and Plaintiff seeks equitable remedies with respect to the Classes as a whole within the meaning of Fed. R. Civ. P. 23(b)(2).

67.     Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Classes.  Fed. R. Civ. P. 23(b)(3).

68.     A class action is the superior method for fair and efficient adjudication of the controversy within the meaning of Fed. R. Civ. P. 23(b)(3).

69.     The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

70.     Plaintiffs' counsel is experienced in class actions, and foresees little difficulty in the management of this case as a class action.

**VI.     CAUSES OF ACTION**

**COUNT ONE**
**(MARYLAND CREDIT GRANTOR CLOSED END CREDIT PROVISIONS)**
(Repossession Class and Usury Class Against Defendant Westlake)

71.     McDaniels re-alleges and incorporates by reference the allegations set forth herein, and further alleges:

72.     Maryland's Credit Grantor Closed End Credit Provisions ("CLEC"), Md. Code Ann., Comm. Law §§ 12-1001, *et seq.*, restricts credit grantors such as Westlake from collecting

any fees, charges or interest not specifically provided enumerated in the closed end credit contract or not specifically provided for under CLEC.

73.     When a credit grantor fails to provide the required notices and the information that is required to be contained there within with respect to repossession of secured consumer goods, the credit grantor must not only forfeit all interest charges, fees and other charges with respect to the loan, but also is not entitled to a deficiency judgment against a consumer.

74.     In violation of CLEC, Westlake failed to provide Named Plaintiff and the Repossession Class with the required notices and information that must be contained there within prior to and after repossessing their secured property, including but not limited to:

      a.   failing to provide the exact location where the property would be sold;

      b.   failing to provide the exact time and date the property would be sold; and

      c.   affirmatively representing to Class Members that Westlake was entitled to a deficiency balance, which in fact, Class Members did not owe and Westlake could not collect.

75.     Westlake charged Named Plaintiff and the Usury Class interest at a rate greater than twenty-four percent (24%).

76.     Westlake charged Named Plaintiff and the Usury Class convenience fees while servicing the loans.

77.     Westlake knowingly engaged in these violations of CLEC, § 12-1021.

### COUNT TWO
### (BREACH OF CONTRACT)
(Repossession Class and Usury Class Against Defendant Westlake)

78.     McDaniels re-alleges and incorporates by reference the allegations set forth herein, and further alleges:

79.     CLEC was in effect at the time Named Plaintiff and all other Class Members' credit contracts were signed and Westlake specifically and unequivocally elected CLEC as the controlling law in its credit contracts with Named Plaintiff and all Class Members and incorporated the CLEC statute into the credit contracts.

80.     The provisions of the CLEC statute become a part of the contracts just as if the parties expressly included the CLEC provisions in their credit contracts.

81.     When Westlake violated CLEC as set forth herein, Westlake materially breached its contracts with Named Plaintiff and the Classes.

82.     As a result of Westlake's breach of contract with Named Plaintiff and the Classes, Named Plaintiff and the Classes have been damaged.

83.     Named Plaintiff and the Classes have been deprived of the substantial rights granted to them by CLEC and under their contracts as set forth above.

84.     Named Plaintiff and the Repossession Class have sustained financial damages as a result of Westlake's collection of money on credit accounts after the insufficient pre-sale notices were provided to Named Plaintiff and Class members.

85.     Named Plaintiff and the Usury Class have sustained financial damages as a result of Westlake's assessment and collection of interest at a rate greater than twenty-four percent and convenience fees.

86.     Named Plaintiff and the Classes also sustained financial damages as a result of Westlake's failure to return all of the interest, costs, fees, insurance premiums and other charges collected on their credit accounts.

87.     Named Plaintiff and the Classes sustained other damages and losses.

## COUNT THREE
## (MARYLAND CONSUMER PROTECTION ACT)
(Repossession Class and Usury Class Against Defendant Westlake)

88.     McDaniels re-alleges and incorporates by reference the allegations set forth herein, and further alleges:

89.     Maryland's Consumer Protection Act ("CPA"), Md. Code Ann., Comm. Law §§ 13-101, *et seq.*, prohibits any "person" from engaging in any unfair or deceptive trade practices, *inter alia,* in the extension of consumer credit and in the collection of consumer debts.  §§ 13-303(3) and (4).

90.     As a "person" under the CPA, § 13-101(h), Westlake is prohibited from engaging in unfair and deceptive trade practices.

91.     The CPA, § 13-301(1), specifically prohibits Westlake from making any false or misleading oral or written statement or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers.

92.     The CPA, § 13-301(3), further prohibits Westlake from failing to state a material fact if the failure deceives or tends to deceive.

93.     In violation of the CPA, §§ 13-301 and § 13-303, Westlake told Named Plaintiff and the Repossession Class in writing that Named Plaintiff and the Repossession Class owed it a deficiency balance which in fact, Named Plaintiff and the Repossession Class did not owe and which Westlake could not collect.

94.     In violation of the CPA, §§ 13-301 and § 13-303, Westlake required Named Plaintiff and the Usury Class in writing to pay Westlake a usurious interest rate and convenience fees.

95.     These written statements were false and misleading and tended to and did deceive

Named Plaintiff and the Class who made payments to Westlake, allowed Westlake to collect money on Repossession and Usury Class member accounts which were not due and owing and incurred other expenses.

96.     In violation of the CPA, §§ 13-301 and § 13-303, Westlake failed to disclose to Named Plaintiff and the Repossession Class: (i) the exact location where the property would be sold; (ii) the exact time and date the property would be sold; (iii) that Westlake did not have the right to a deficiency judgment; and (iv) that Westlake did not have the right to collect on any deficiency.

97.     This failure to disclose material facts led Named Plaintiff and the Repossession Class to make payments or allowed Westlake to collect money on Repossession Class Member accounts which were not due and which they would not have made or allowed Westlake to keep had Westlake informed them of the material facts and incurred other expenses.

98.     Westlake committed unfair and deceptive practices by collecting and attempting to collect on an alleged debts which, in fact, were not due and this conduct constitutes unfair and deceptive trade practices in violation of the CPA, § 13-101, *et seq.*, including §§ 13-303(3) and (4), and §§ 13-301(1) and (3).

99.     As a result of Westlake's unfair and deceptive trade practices in violation of the MCPA, Named Plaintiff and the Classes were induced to make payments to Westlake on interest charges, fees, insurance premiums, convenience fees and non-existent debts and allowed Westlake to collect funds that belonged to the Classes, causing Named Plaintiff and the Classes injury and loss.

**COUNT FOUR**
**(RESTITUTION AND UNJUST ENRICHMENT**)
(Repossession Class and Usury Class Against Defendant Westlake)

100.    McDaniels re-alleges and incorporates by reference the allegations set forth herein, and further alleges:

101.    By paying money on deficiency balances, interest, late fees, other fees, costs and other charges claimed by Westlake and by allowing Westlake to collect money on the accounts, Named Plaintiff and members of the Classes conferred a benefit of these illegally collected charges upon Westlake.

102.    Westlake accepted the benefits conferred upon them by Named Plaintiff and members of the Classes when they accepted the money paid toward illegally assessed deficiency balances, interest, costs, late fees, other fees and other charges.

103.    Further, Westlake was aware of, and had knowledge of, the benefits conferred on them, as it demanded those benefits.

104.    By paying money toward interest, fees, costs and other charges on their accounts before and after repossession, Named Plaintiff and members of the Classes conferred a benefit on Westlake.

105.    Westlake accepted the benefits conferred upon them by Named Plaintiff and members of the Classes when they accepted the money paid toward interest, fees, costs and other charges.

106.    Further, Westlake was aware of, and had knowledge of, the benefits conferred on them, as it demanded those benefits.

107.    Westlake's collection, acceptance and retention of these charges, when Westlake was not entitled to the charges as a matter of law, is and was and continues to be unjust and

inequitable.

108.    Westlake has not refunded the charges to Named Plaintiff and members of the Classes.

109.    Westlake should not be permitted to retain the benefits of those illegal charges.

110.    Westlake's continued withholding of the charges is improper.

111.    Named Plaintiff and members of the Classes conferred these unjust benefits upon Westlake, in part, as a result of Westlake's misconduct as set forth herein.

## COUNT FIVE
## (FAIR DEBT COLLECTION PRACTICES ACT)
### (Individually Against Defendant William Feldman)

112.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

113.    Defendant William Feldman is a law firm that actively participating in collecting debts from consumers located in Maryland and filing debt collection law suits in the Maryland state court system.

114.    Defendant William Feldman services defaulted consumer debt on behalf of original creditors and is hired as a debt collection attorney.

115.    Defendant William Feldman conducts business in Maryland by attempting to collect on consumer debts by contacting Maryland consumers and filing lawsuits against Maryland consumers in Maryland state courts.

116.    The credit contract entered into between Plaintiff and Defendant Westlake was a financial obligation and consumer debt that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C § 1692a(5), Md. Code Ann., Comm. Law §§ 13-101(d) and 14-201(c).

117.    When Defendant William Feldman attempted to collect the alleged consumer debt from Plaintiff McDaniels, Defendant William Feldman lacked the authority to conduct such business in Maryland.

118.    By doing business in Maryland, Defendant William Feldman assents to the laws of Maryland.

119.    Defendant William Feldman is a "collection agency" as that term is defined by Title 7 of the Business Regulation Article, Maryland Code Annotated because Defendant William Feldman services consumer debt after the debt is in default.

120.    A "collection agency" is required to be licensed by the appropriate Maryland state agency.

121.    A "collection agency" must apply for and be issued a license by the appropriate Maryland state agency for each location the "collection agency" attempts to collect debts from.

122.    Defendant William Feldman was not licensed as a "collection agency" from any location in Maryland during the time period regarding the allegations of this Complaint.

123.    Defendant William Feldman also made false, unfair and deceptive statements in attempting to collect the alleged Westlake debt.

124.    Defendant William Feldman mischaracterized the amount due and owing to Westlake by attempting to collect usurious contractual interest rates and any contractual interest after the date of the repossession sale.

125.    While attempting to collect the alleged debt from Plaintiff, Defendant William Feldman acted in an abusive, harassing and deceptive manner contrary to the standards of civilized society and the standards employed by others in its industry and in violation of numerous provisions of the FDCPA.

126.    FDCPA violations include, but are not limited to: 15 U.S.C. §§ 1692(b); 1962c(b),1692d, 1692e, 1692e(2), 1692e(5), 1692e(10), 1692e(11), 1692f , 1692f(1) and 1692g(a) amongst others.

127.    As a direct and proximate result of Defendant William Feldman's illegal collection tactics and harassing behavior in violation of the FDCPA, Plaintiff has sustained actual damages in the form of expenses in attempting to correct Defendant's misguided and illegal collection activities, extreme stress, fear, confusion, anger, humiliation, and embarrassment.

**COUNT FIVE**
**(MARYLAND CONSUMER DEBT COLLECTION ACT**)
(Individually Against Defendants Westlake and William Feldman)

128.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

130.    Maryland's Consumer Debt Collection Act, Md. Code Ann., Comm. Law §§ 14-201 *et seq.* ("MCDCA"), states that a "collector" while collecting or attempting to collect a debt may not claim, attempt, or threaten to enforce a right with knowledge that the right does not exist. § 14-202(8).

131.    As a "collector" and "person" under the MCDCA, § 14-201(b) and (d), Defendants William Feldman, Westlake and its agents and employees are prohibited from performing or failing to perform any action described above and from abusing or harassing Plaintiff while collecting or attempting to collect an alleged debt.

132.    The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the MCDCA, including but not limited to each of the above-cited provisions of the MCDCA, § 14-202.

133.    As a result of Defendants' harassing and abusive debt collection practices in violation of the MCDCA, Defendants have caused Plaintiff actual damages in the form of expenses in attempting to correct Defendant's misguided and illegal collection activities, severe emotional distress and mental anguish and embarrassment, including but not limited to severe stress, many sleepless nights, a feeling of hopelessness and headaches.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

A.    Assume jurisdiction of this case;

B.    Enter an order requiring Westlake within 30 days to notify all credit reporting agencies to whom it reports that (i) Named Plaintiff and members of the Repossession Class have a zero balance on their accounts, and (ii) removing any notation to the effect that the Repossession Class account has been charged off;

C.    Enter an order certifying the Class under Fed. R. Civ. P.  23(b)(2) and (b)(3).

D.    Enter an order requiring that Westlake pay to Named Plaintiff and the Classes the statutory penalties imposed by CLEC, § 12-1018;

E.    Enter an order requiring Westlake pay to Named Plaintiff and the Classes treble the statutory penalties imposed by § 12-1018;

F.    Order that due to its violations of CLEC, § 12-1021, Westlake cannot collect any amounts from the Repossession Class;

G.    Award Named Plaintiff and members of the Classes actual damages, reasonable attorney's fees and costs in accordance with CPA, § 13-408.

H.    Enter judgment in favor of Named Plaintiff and members of the Classes against Westlake for such compensatory damages as the evidence shall warrant;

I.      Enter an order declaring that the Defendant Westlake's actions as described above are in violation of the MCDCA;

J.      Enter an order declaring that the Defendant William Feldman's actions as described above are in violation of the FDCPA and MCDCA;

K.      Award actual, compensatory damages and punitive damages pursuant to 15 U.S.C. § 1692k against Defendant William Feldman including an award for emotional distress and mental anguish;

L.      Award statutory damages pursuant to 15 U.S.C. § 1692k against Defendant William Feldman;

M.      Award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k against Defendant William Feldman;

N.      Award actual and compensatory damages, including an award for emotional distress and mental anguish pursuant to MCDCA, § 14-203;

O.      Award reasonable attorney's fees and costs of litigation pursuant to Maryland's Consumer Protection Act, Md. Code Ann., Comm. Law § 13-408 (*see* 13-301(14)(iii));

P.      Enter an award of pre-judgment and post-judgment interest on all sums awarded to Named Plaintiff and members of the Classes; and

Q.      Award such other relief as the court deems appropriate.

Respectfully submitted,

Z LAW, LLC


Dated: July 5, 2011                    By**:          /s/  28191                            **
                                        Cory L. Zajdel, Esq.
                                        10811 Red Run Blvd., Ste. 204

Owings Mills, Maryland 21117
(443) 213-1977

**Attorney for Plaintiff and the Classes**

## **JURY TRIAL**

Named Plaintiff Ashley McDaniels on behalf of herself and all others similarly situated demands trial by jury.

_/s/  28191_
Cory L. Zajdel