## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND
#### (Northern Division)

| | |
|---|---|
| ASHLEY MCDANIELS, *et al.* | |
| Plaintiffs, | |
| v. | |
| WESTLAKE SERVICES, LLC D/B/A WESTLAKE FINANCIAL SERVICES | Case No. 1:11-cv-1837-BEL |
| Defendant. | |

### SETTLEMENT AGREEMENT

This Settlement Agreement is entered into as of January 19, 2012, by Ashley McDaniels ("Representative Plaintiff"), acting individually and on behalf of the classes defined below, and Defendant, Westlake Services, LLC d/b/a Westlake Financial Services ("Westlake"). This Settlement Agreement is subject to preliminary and final approval by the Court pursuant to Fed. R. Civ. P. 23(e).

### I.    RECITALS

1.    Representative Plaintiff filed this putative class action lawsuit in the United States District Court for the District of Maryland on July 5, 2011.

2.    Representative Plaintiff seeks through this Settlement Agreement to represent two putative classes of consumers – (1) the Repossession Class and (2) the Interest Rate/Fee Class.

3.    The Repossession Class consists of all persons whose consumer goods were repossessed by Westlake on or before July 22, 2011 in connection with a credit contract governed by Subtitle 10 of Title 12 of the Maryland Commercial Law article (*i.e.*, Maryland's Credit Grantor Closed End Credit Provisions – hereinafter abbreviated as "CLEC").

4.    The Interest Rate/Fee Class consists of all persons who were charged  interest at a

rate greater than twenty-four percent (24%) and/or a convenience fee in connection with credit contracts entered prior to July 22, 2011 that were financed by, assigned to or acquired by Westlake and were governed by the CLEC.

5.    In her Complaint, Representative Plaintiff alleges that Westlake effected the repossessions in Maryland through form notices of the pending sale and form notices of the claimed deficiency that allegedly failed to comply with all of the requirements of CLEC.

6.    Representative Plaintiff also alleges that Westlake charged certain Maryland consumers interest rates in excess of the 24% permitted by CLEC and convenience fees.

7.    Representative Plaintiff asserts four claims for relief on behalf of the Classes: (1) violation of CLEC; (2) breach of contract; (3) violation of Maryland's Consumer Protection Act, Md. Code Ann., Com. Law § 13-101, *et seq.*; and (4) restitution and unjust enrichment.

8.    Representative Plaintiff also asserts an individual claim that Westlake violated the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law § 14-201, *et seq.* when it attempted to collect interest and deficiency amounts in a collection action filed against her in Maryland state court.

9.    Prior to negotiating this settlement, the Representative Plaintiff and Westlake conducted extensive research into the applicable law with respect to the claims and defenses and with respect to class certification issues and exchanged information regarding the size and scope of the classes.

10.    This settlement was reached after and as the result of detailed and lengthy arms-length negotiations with the assistance of the Honorable Beth P. Gesner, United States Magistrate Judge.

11.    Westlake has represented, and Representative Plaintiff relies upon such representation, that:

A.   The obligors on 3,056 credit accounts arguably fall within one or both of the Classes.

B.   Of the 3,056 credit accounts identified by Westlake, the vehicles securing the debt on 219 credit accounts were repossessed and sold by Westlake. The obligors on those 219 credit accounts are considered the potential members of the Repossession Class for purposes of this Settlement Agreement.

C.   Of the 3,056 credit accounts whose obligors were identified as potential members of the Classes, the obligors on 3,050 credit accounts were charged a convenience fee or an interest rate greater than twenty four percent (24%).  The obligors on these 3,050 accounts are considered potential members of the Interest Rate/Fee Class for purposes of this Settlement Agreement.

D.   The obligors on 2,837 of the 3,050 Interest Rate/Fee Class accounts did not have their vehicles repossessed by Westlake prior to July 22, 2011 and thus are not potential members of the Repossession Class.  These 2,837 accounts are referred to in this Settlement Agreement as Non-Repossession Accounts.

E.   Included in the 2,837 Non-Repossession Accounts are 147 accounts that had been charged off by Westlake on or before July 22, 2011.  Those 147 accounts are referred to in this Settlement Agreement as the Charged-Off Accounts.

F.   The obligors on at least 1,023 of the credit accounts identified as potentially within one or both Classes for purposes of this Settlement

3

Agreement could have arguably been excluded from the Classes due to legal defenses regarding arbitration clauses and statute of limitations.

G.    Within ten (10) days of receiving service of process in the Action, Westlake, on its own accord and in an attempt to cure any alleged violations of the CLEC asserted in the Complaint, took the following actions on or before July 22, 2011:

1.    Westlake ceased using the allegedly defective pre-sale notice and post-sale accounting and has modified its pre-sale notices and post-sale accounting to cure the defects alleged in this Action.

2.    Westlake ceased charging convenience fees to Maryland consumers that entered into a credit contract governed by CLEC.

3.    Westlake ceased charging interest at a rate greater than twenty-four percent (24%) to Maryland consumers that entered into a credit contract governed by CLEC.

4.    Westlake waived all interest on Repossession Class credit accounts and credited all interest payments made, including the proceeds of the sale of collateral, to principal.  The total of such interest payments re-classified to principal and waivers of unpaid interest was approximately $416,415.

5.    Westlake also credited each Repossession Class credit account with six percent (6%) interest from the date of each interest payment that was reclassified to principal.  The total of the six-percent interest credited to Repossession Class credit accounts was approximately $197,835.

6.  Westlake waived all convenience fees charged to Repossession Class credit accounts, totaling $5,067, and reallocated those convenience fee payments toward principal. Westlake also credited Repossession Class credit accounts with six percent (6%) interest from the date of each convenience fee payment that was re-allocated, resulting in additional credits of $671.

7.  In addition to the credits described in the preceding Sections 11.G.4, 11.G.5 and 11.G.6, Westlake waived all outstanding balances and/or deficiencies that were owed in connection with the Repossession Class credit accounts. The total of the outstanding balances waived was approximately $453,304.

8.  Westlake dismissed, with prejudice, any pending collection lawsuits against the Repossession Class obligors grounded upon an alleged deficiency or balance due with respect to any of those contracts.

9.  Westlake also filed a request to vacate judgment in any case in which a judgment had been entered against any Repossession Class obligor.

10. Westlake mailed checks totaling $97,996.87 to Repossession Class obligors for overpayments by such obligors resulting from the above-described credits, reclassifications and waivers.

11. Westlake recalculated all of the Non-Repossession Accounts that exceeded twenty-four percent (24%) interest as if they were issued at 24%, which resulted in the reallocation of interest payments

toward principal totaling approximately $377,280. This recalculation of the interest rate is also estimated to save Non-Repossession Account obligors an additional $400,000 in interest costs over the estimated life of the loans at July 22, 2011.

12. Westlake also credited all Non-Repossession Accounts with six percent (6%) interest from the date of each interest payment that was reclassified, resulting in additional credits totaling $25,637.

13. Westlake waived all convenience fees charged to Non-Repossession Accounts, totaling approximately $111,818, and reallocated those convenience fee payments toward principal.

14. Westlake also credited the Non-Repossession Accounts with six percent (6%) interest from the date of each convenience fee payment that was reallocated, resulting in additional credits of approximately $5,455.

15. Westlake mailed checks totaling $123,659.59 to obligors on the Non-Repossession Accounts for overpayments by such obligors resulting from the above-described credits, reclassifications and waivers.

16. Thus, the total amount of refund checks already issued to potential members of the Classes is approximately $221,656.

H. Of the $221,656 in refund checks sent to potential members of the Classes by Westlake previously, checks totaling $19,046.31 remained uncashed as of November 18, 2011.

12.    The Parties recognize and acknowledge the benefits of settling this case.  Class Counsel has taken into account the risk of litigation and defenses available to Westlake, as well as the difficulties and delays inherent in such litigation and the likelihood of protracted appeals. Class Counsel has, therefore, determined that the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate and in the best interest of the Representative Plaintiff and the Classes. The Representative Plaintiff concurs in this determination.

13.    Westlake denies all claims asserted against it in the Action, and believes it has meritorious defenses as to both liability and damages.  Nonetheless, Westlake desires to enter into this settlement in order to avoid the burden, expense, risk and uncertainty of litigating the Action, as well as disruption to its business.

14.    Subject to approval of the Court, the attorneys for both of the Parties agree that The Casey Group, Ltd. should administer the settlement of this case (hereinafter the "Settlement Administrator").  The Settlement Administrator is responsible to report both to the Court and to the Parties as more fully set forth in this Settlement Agreement.

15.    The Parties understand, acknowledge and agree that the execution of this Settlement Agreement constitutes the settlement and compromise of disputed claims.  This Settlement Agreement is inadmissible as evidence against any party except to enforce the terms of the Settlement Agreement and is not an admission of wrongdoing or liability on the part of any party to this Settlement Agreement.

NOW, THEREFORE, in consideration of the covenants and agreements set forth herein, it is stipulated and agreed by the undersigned on behalf of the Representative Plaintiff, the Classes and Westlake that the Action and all claims of the Representative Plaintiff and Classes are settled, compromised, and dismissed on the merits and with prejudice, subject to Court approval as required by Fed. R. Civ. P. 23, on the terms and conditions set forth in this

Settlement Agreement.

## II.    TERMS OF THE SETTLEMENT

16.    **Definitions**:

(a)    "Action" means the action titled *Ashley McDaniels v. Westlake Services, LLC*, United States District Court for the District of Maryland, Civil No. 1:11-cv-01837-BEL.

(b)    "Charged-Off Accounts" means the 147 Non-Repossession Accounts that were charged off by Westlake on or before July 22, 2011.

(c)    "Classes" means the Repossession Class and the Interest Rate/Fee Class as defined in Section 18 of this Settlement Agreement.

(d)    "Class Account Files" means the records to be provided by Westlake as described in Section 20(c).

(e)    "Class Counsel" or "Counsel for Representative Plaintiff" means Cory L. Zajdel and Z Law, LLC.

(f)    "Class List" means the list of potential members of the Classes that is to be compiled and certified by Westlake, and provided to Class Counsel and the Settlement Administrator.

(g)    "Class Member" means a consumer who meets the definition of one or both of the Classes and who does not timely opt out pursuant to the terms of this Settlement Agreement and the Preliminary Approval Order.

(h)    "Class Notice" means the notice of proposed class action settlement that will be sent to the Classes pursuant to the Preliminary Approval Order.  The form of Class Notice to be proposed to the Court by the Representative Plaintiff is attached as Exhibit A.

(i)    "Complaint" means the Class Action Complaint filed in the Action.

(j)    "Court" means the United States District Court for the District of

8

Maryland, Northern Division.

(k)     "Defendant" means Westlake, as defined in Section 16(aa).

(l)     "Effective Date" means the earlier of:  (i) thirty (30) days after the date the Court enters the Final Approval Order and Judgment, if no document is filed within that time seeking appeal, review, reconsideration or any other action affecting the Final Approval Order and Judgment or the time for appeal; or (ii) if such a document is filed within thirty days after the date the Court enters the Final Approval Order and Judgment, the date on which all appellate and/or other proceedings relating to the Final Approval Order and Judgment have been fully terminated and the Final Approval Order and Judgment is affirmed so as to permit no further appeal or other judicial action.

(m)     "Eligible Credit Account" means a credit account (i) that falls within the definition of the Interest Rate/Fee Class, (ii) where no obligor on the account has opted out of the Interest Rate/Fee Class, and (iii) as to which the Settlement Administrator has not determined that the last known address for the account is invalid.

(n)     "Final Approval Order and Judgment" means the final Order, as described in Section 37 below, approving the Settlement Agreement, certifying the Classes, and entering judgment in the Action.  The Parties' proposed Final Approval Order and Judgment is attached hereto as Exhibit B.

(o)     "Interest Rate/Fee Class" is defined in Section 18 of this Settlement Agreement.

(p)     "Non-Repossession Accounts" means accounts whose obligors are potential members of the Interest Rate/Fee Class but not the Repossession Class.

(q)     "Parties" means the Representative Plaintiff and Westlake.

(r)      "Preliminary Approval Date" means the date the Court enters the

Preliminary Approval Order approving this settlement.

        (s)     "Preliminary Approval Order" means the Order entered by the Court, as described more fully in Section 34 below, preliminarily approving this settlement, provisionally certifying the Classes, and approving notice to Class Members. The Parties' proposed Preliminary Approval Order is attached hereto as Exhibit C.

        (t)     "Released Claims" means:

        (i) With respect to members of the Repossession Class and obligors on the Charged-off Accounts, "Released Claims" means and includes any and all rights, duties, obligations, claims, actions, causes of action or liabilities, whether arising under local, federal or state law (including without limitation under Maryland's Credit Grantor Closed End Credit Provisions, Md. Code. Ann., Comm. Law § 12-1001 *et seq.*, Maryland's Consumer Protection Act, Md. Code. Ann., Comm. Law § 13-101 *et seq.*, the Maryland Consumer Debt Collection Act, Md. Code Ann., Comm. Law § 14-201 *et seq.*, and the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1681 *et seq.*), whether by statute, contract, common law, or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, as of the date of final judgment: (1) that arise out of or are related in any way to any or all of the acts, omissions, facts, matters, transactions, or occurrences that were or could have been directly or indirectly alleged, asserted, described, set forth or referred to in the Action; (2) that are, were, or could have arisen out of or been related in any way to Class Members' accounts; or (3) that relate to the administration of the settlement;

        (ii)     With respect to the remaining members of the Interest Rate/Fee Class, "Released Claims" means and includes any and all rights, duties, obligations, claims, actions, causes of action or liabilities, whether arising under local, federal or state law (including

without limitation under Maryland's Credit Grantor Closed End Credit Provisions, Md. Code.
Ann., Comm. Law § 12-1001 *et seq.*, Maryland's Consumer Protection Act, Md. Code. Ann.,
Comm. Law § 13-101 *et seq.*, the Maryland Consumer Debt Collection Act, Md. Code Ann.,
Comm. Law § 14-201 *et seq.*, and the federal Fair Debt Collection Practices Act, 15 U.S.C. §
1681 *et seq.*), whether by statute, contract, common law, or equity, whether known or unknown,
suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent,
liquidated or unliquidated, as of the date of final judgment: (1) that arise out of or are related in
any way to any or all of the acts, omissions, facts, matters, transactions, or occurrences that were
directly or indirectly alleged, asserted, described, set forth or referred to in the Action; (2) that
arise or relate in any way to the interest rate or convenience fees charged by Westlake in
connection with Class Members' credit accounts prior to July 22, 2011; or (3) that relate to the
administration of the settlement.

   (u) "Released Persons" means Westlake as well as its present, former and
future direct and indirect parent companies, affiliates, subsidiaries, divisions, and/or any
financial institutions, corporations, trusts or other entities that may hold or have held any interest
in any credit account or any receivables relating to any account, or any receivables or group of
receivables, and all of their current and former officers, directors, owners, investors, bond
holders, employees, agents, attorneys, vendors, independent contractors, insurers, predecessors,
successors and assigns.

   (v) "Repossession Class" is defined in Section 18 of this Settlement
Agreement.

   (w) "Representative Plaintiff" refers to Ashley McDaniels.

   (x) "Settlement Administrator" means The Casey Group, Ltd., 502
Washington Avenue, Suite 650, Towson, Maryland 21204 or such other person or entity as the

Court may appoint to perform the role of Settlement Administrator.

(y)     "Settlement Fund" means the sum referred to in Paragraph 22.R. below which is being paid by Westlake to settle the Action is accordance with the terms of this Settlement Agreement.

(z)     "Total Settlement Fund" means the sum of the Settlement Fund and all amounts previously distributed to potential members of the Classes in this Action as described in Sections 11.G.10, and 11.G.15 of this Settlement Agreement.

(aa)    "Westlake" means Westlake Services, LLC d/b/a Westlake Financial Services.

17.     **Class Certification**.  For purposes of this settlement only and its implementation, the Parties hereby stipulate and agree that this lawsuit may be certified as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure in accordance with the terms of this Settlement Agreement.  This stipulation and agreement is without prejudice to Westlake's right to contest class certification in the event that this Settlement Agreement is not fully implemented in accordance with its terms.  If this Settlement Agreement is not approved or otherwise fails to be fully implemented, or if the Final Approval Order and Judgment is reversed in whole or part on appeal, (1) the certification of the Classes for settlement purposes will be vacated, (2) Westlake reserves all of its rights to object to any subsequent motion to certify a class in this lawsuit, and (3) no representation or concession made in connection with the settlement or in this Settlement Agreement or any order preliminarily or finally certifying the Classes shall be considered law of the case or an admission by Westlake or give rise to any form of estoppel or waiver by Westlake in this Action or any other proceeding.  Westlake does not agree to certification of the Classes for any purpose other than to effectuate this Settlement Agreement.

18.     **Classes.**  The Parties hereby stipulate and agree that the two Classes shall be

12

defined as follows:

*Repossession Class*

All persons whose consumer goods were repossessed by Westlake on or before July 22, 2011 in connection with a credit contract governed by Subtitle 10 of Title 12 of the Maryland Commercial Law Article.

*Interest Rate/Fee Class*

All persons who were charged interest at a rate greater than twenty-four percent (24%) and/or a convenience fee in connection with consumer credit contracts entered prior to July 22, 2011 that were financed by, assigned to, or acquired by Westlake and were governed by Subtitle 10 of Tile 12 of the Maryland Commercial Law Article.

Excluded from the Classes are those individuals who now are, or ever have been, an officer of Westlake as well as the spouses, parents, siblings and children of all such individuals.

19.     **Class Counsel.**   The Parties agree that Cory L. Zajdel of Z Law, LLC may be appointed Class Counsel for the Classes, without prejudice to Westlake's right to contest the appointment as Class Counsel in the event that this Settlement Agreement is terminated or not fully implemented in accordance with its terms.  If this Settlement Agreement is not approved or otherwise fails to be fully implemented, Westlake reserves all of its rights to object to any subsequent motion to appoint Class Counsel in this Action.

20.     **Class List and Account Files.**

(a)     Within fourteen (14) business days after Preliminary Approval, and receipt by Westlake's counsel of written notice from the Settlement Administrator that it agrees to be bound to the confidentiality provisions in this Settlement Agreement, Westlake will provide Class Counsel and the Settlement Administrator with a Class List in electronic format.  For each credit account that falls within the definition of one of the Classes, Westlake will provide, if applicable, the: (a) name of the obligor or obligors; (b) last known address; (c) date of credit

contract; (d) amount financed; (e) amount charged for convenience fees; (f) date of repossession; (g) balance as of July 14, 2011; (h) amount of relief credited to the account following service of the Complaint; and (j) amount of any refund checks sent to consumer. In addition, Westlake will identify which of the Classes each potential member of the Classes belongs to and which credit accounts in the Interest-Rate/Fee Class were Charged-Off Accounts and/or Non-Repossession Accounts. In preparing the Class List, Westlake shall use reasonable, good faith efforts to identify all potential members of the Classes.

(b)    Together with the Class List, Westlake will provide Class Counsel with a sworn affidavit describing: (a) the methodology employed by Westlake and the work done by Westlake to compile the Class List; and (b) the total amount of refund checks issued by Westlake to potential members of the Classes that were returned or remained uncashed at the date the Class List is prepared.

(c)    Within thirty (30) days after the Preliminary Approval Date, in a mutually convenient manner, Westlake will provide Class Counsel with true and accurate copies of a reasonable sample of the records of credit accounts of obligors who are potential members of the Classes (not to exceed 10%) consisting of: (a) the retail installment sales contract; (b) the account history; (c) a calculation of the amount Westlake credited to the account and/or refunded to the consumer by check; and (d) an electronic copy of the text of the letter mailed to the consumer with respect to Westlake's efforts to cure (collectively the "Class Account Files").

(d)    Class Counsel and the Settlement Administrator agree and acknowledge that the information contained in the Class List and the Class Account Files (collectively, the "Confidential Material") contains confidential information. They agree to treat any Confidential Material they receive as confidential and to use the Confidential Material solely for the purpose

of providing the settlement benefits offered by this Settlement Agreement to Class Members and otherwise implementing the terms of this Settlement Agreement, and for no other purpose whatsoever.  They agree to maintain the confidentiality of the Confidential Material and not to permit access to the Confidential Material to anyone except as authorized by this Settlement Agreement.  Further, the Settlement Administrator shall certify in writing prior to receipt of any of the Confidential Material that it agrees to be bound by the confidentiality provisions in this Settlement Agreement.

(e)     No later than one hundred eighty (180) days after the Effective Date, Settlement Administrator and Class Counsel shall return to Westlake's counsel or destroy all Confidential Material in their possession and shall provide written notice to Westlake's counsel that they have destroyed or returned the Confidential Material.  For all Confidential Material returned, Class Counsel and Settlement Administrator will certify under oath that they, their employees, agents and consultants did not retain any copies or summaries or compilations of the Confidential Material.  The provisions of this section of the Settlement Agreement shall survive any termination or modification of the Settlement Agreement and shall continue to be binding regardless of whether the settlement is fully implemented.

21.     **Confirmatory Discovery.**  Within sixty (60) days after the Preliminary Approval Date, Westlake will provide a sworn affidavit affirming the representations in this Settlement Agreement regarding actions taken by Westlake.

22.     **Class Relief.**  In exchange for the release stated herein and the dismissal of this Action with prejudice, Westlake has already provided the following forms of relief to the Classes:

A.     Westlake ceased using the allegedly defective pre-sale notice and post-sale

accounting and has modified its pre-sale notices and post-sale accounting to cure the defects alleged in this Action as of July 22, 2011.

B.  Westlake ceased charging convenience fees to Maryland consumers that entered into a credit contract governed by CLEC as of July 22, 2011.

C.  Westlake ceased charging interest at a rate greater than twenty-four percent (24%) to Maryland consumers that entered into a credit contract governed by CLEC as of July 22, 2011.

D.  Westlake waived all interest on Repossession Class credit accounts and credited all payments, including the proceeds of the sale of collateral, to principal. The total of such interest payments re-classified to principal and waivers of unpaid interest was approximately $416,415.

E.  Westlake also credited each Repossession Class credit account with six percent (6%) interest from the date of each payment that was reclassified. The total of the 6% interest credited to Repossession Class credit accounts was approximately $197,835.

F.  Westlake waived all convenience fees charged to Repossession Class credit accounts totaling $5,067, and reallocated those convenience fee payments toward principal. Westlake also credited Repossession Class credit accounts with six percent (6%) interest from the date of each convenience fee payment that was reallocated, resulting in additional credits of $671.

G.  In addition to the credits described in the preceding Sections 22.D., 22.E and 22.F., Westlake waived all outstanding balances and/or deficiencies

16

that were owed in connection with the Repossession Class credit accounts. The total of the outstanding balances waived was approximately $453,304.

H.    Westlake dismissed, with prejudice, any pending collection lawsuits against the Repossession Class obligors grounded upon an alleged deficiency or balance due with respect to any of those contracts.

I.    Westlake also filed a request to vacate judgment in any case in which a judgment was entered against any Repossession Class obligor.

J.    Westlake mailed checks totaling $97,996.87 to Repossession Class obligors for overpayments by such obligors resulting from the above-described credits, reclassifications and waivers.

K.    Westlake recalculated all of the Non-Repossession Accounts that exceeded twenty-four percent (24%) interest as if they were issued at 24%, which resulted in the reallocation of interest payments toward principal totaling approximately $377,280.  This recalculation of the interest rate was also estimated to save Non-Repossession Account obligors an additional $400,000 in interest costs over the estimated life of the loans at July 22, 2011.

L.    Westlake also credited all Non-Repossession Accounts with six percent (6%) interest from the date of each interest payment that was reclassified, resulting in additional credits totaling $25,637.

M.    Westlake waived all convenience fees charged to Non-Repossession Accounts, totaling approximately $111,818, and reallocated those convenience fee payments toward principal.

N.    Westlake also credited all Non-Repossession Accounts with six percent (6%) interest from the date of each convenience fee payment that was reallocated, resulting in additional credits of approximately $5,455.

O.    Westlake mailed checks totaling $123,659.59 to obligors on the Non-Repossession Accounts for overpayments by such obligors resulting from the above-described credits, reclassifications and waivers. Thus, the total amount of refund checks already issued to potential members of the Classes is approximately $221,656.

P.    Additionally, with respect to the Interest Rate/Fee Class credit accounts that were Charged-Off Accounts, Westlake has, as of October 10, 2011, waived all outstanding balances and/or deficiencies that were owed in connection with the Charged-off Accounts. (The total of the outstanding balances waived at that time was approximately $481,421).

Q.    With respect to Repossession Class credit accounts, and the Charged-Off Accounts, Westlake has contacted credit reporting agencies Equifax, Trans Union and Experian (collectively the "CRAs") and requested deletion of the trade lines relating to those credit accounts. It is understood and agreed by the Parties, the Repossession Class and the obligors on the Charged-Off Accounts that: (i) the CRAs are independent companies and not affiliated with Westlake; (ii) Westlake cannot and does not guarantee that the CRAs have acted or will act upon Westlake's request to delete the trade lines; (iii) Westlake is not responsible for assuring or compelling any CRA action in response to the reporting of the information for the trade

lines; and (iv) Westlake will not be liable to any obligor on the credit accounts for the failure by one or more of the CRAs to properly delete a trade line.  If after a reasonable period of time one or more of the CRAs fails to report the information as provided by Westlake, then Class Counsel or any individual Class Member may request that Westlake resubmit the information to one or more CRAs for the trade line. Westlake's obligation is limited to not more than one resubmission to each CRA for each Class Member.  Within thirty (30) days of receipt of such a request, Westlake will resubmit the trade line request to the CRAs.  Any request to resubmit should be made in writing and sent to:

> Westlake Financial Services
> Attn: Cecelia Park
> 4751 Wilshire Blvd., Suite 100
> Los Angeles, California 90010.

In addition, subject to the approval and further order of the Court, within fifteen (15) days following the Preliminary Approval Date:

R.   Westlake agrees to pay the sum of Five Hundred Twenty Thousand Dollars ($520,000.00) (the "Settlement Fund") to a Settlement Fund for the benefit of Class Members as described below and shall deliver the Settlement Fund to the Settlement Administrator in the form of a check payable to *McDaniels v. Westlake Services, LLC c/o The Casey Group, Ltd.*  The Settlement Fund is to be held by the Settlement Administrator in escrow pending Final Approval, as set forth in this Settlement Agreement. In the event that Westlake determines that the number of Interest Rate/Fee Class accounts is greater than the 3,050 accounts described in this

Settlement Agreement, the amount of the Settlement Fund shall be increased by the amount of $170.49 per each additional account and Westlake shall also provide each additional account the relief granted to other Interest Rate/Fee Class Members in accordance with Sections 22.K. – 22.O. The Parties understand and agree that the payments into the Settlement Fund required by this Section 22.R. and by Section 24.F. below constitute Westlake's total future financial obligation to the Plaintiff, the Classes, the Settlement Administrator and Class Counsel in connection with the settlement and the Settlement Agreement.

23. **Initial Payments from the Settlement Fund.** The following payments shall be made by the Settlement Administrator from the Settlement Fund within five (5) days after the Effective Date:

   A.    Payment of Class Counsel's costs and expenses of litigation to the extent allowed and approved by the Court;

   B.    Class Counsel's fees in such amount as may be allowed and approved by the Court;

   C.    Payment of the costs of notice, mailing and administration, to the extent approved by the Court; and

   D.    Payment of an incentive award to the Representative Plaintiff to the extent allowed and approved by the Court.

24. **Distribution of Remaining Balance of Settlement Fund To Class Members.**

   A.    After deductions for litigation costs, administration costs, notice costs, attorney's fees and incentive fee awarded by the Court, the remaining

amount of the Settlement Fund shall be divided equally by the number of Eligible Credit Accounts (currently understood to potentially number 3,050 credit accounts). A pro-rata share will be paid to the obligor(s) of each Eligible Credit Account. The share to be paid to the obligor(s) of each such Eligible Credit Account shall not change or be recalculated in the event that any funds are returned to the Settlement Fund pursuant to Section 24.E. below.

B.      Payments to the Class Members with Eligible Credit Accounts shall be in the form of a check drawn on an account maintained by the Settlement Administrator and shall be made payable to "[Name of Class Member]" within fifteen (15) days after the Effective Date.

C.      The Settlement Administrator shall not make multiple payments from the Settlement Fund to co-borrowers who are entitled to relief under this Settlement Agreement on account of the same credit transaction, but in such cases, shall make only one payment, for each transaction, jointly to all such co-borrowers, and Westlake shall have no liability to any co-borrower arising from any claim regarding the division of such funds among co-borrowers.

D.      Each check issued pursuant to this Settlement Agreement shall be void if not negotiated within one hundred and twenty (120) days after its date of issue. Checks that are not negotiated within one hundred and twenty (120) days after their date of issue shall not be reissued.

E.      All payments that are unclaimed by Class Members, including, all returned checks and all checks not cashed within one hundred and twenty (120) days after the date of issue, shall revert to the Settlement Fund and be distributed to the *cy pres* recipient as described in Paragraph 27 below.

F.      Additionally, at least twenty-five (25) days prior to the Final Approval hearing, Westlake shall certify the total dollar amount of refund checks described in Section 11.G. that remain uncashed and make an additional contribution in that amount to the Settlement Fund.

25.    **Settlement Administrator**.    The Settlement Administrator will be responsible for: (a) mailing the Class Notice to the potential members of the Classes based on information provided by Westlake as set forth in Paragraph 20(a) above and in a form and manner approved by the Court within thirty (30) days after Preliminary Approval; (b) conducting appropriate research, using a competent information broker on the Internet and/or a recognized credit bureau to ensure that any mailed notice which is returned for the reason that the address is incorrect will be corrected and a second notice sent; (c) opening an account for the deposit of the Settlement Fund as set forth in Paragraph 22.R. of this Settlement Agreement and for disbursing all funds from the Settlement Fund in accordance with Sections 23, 24 and 27 of this Settlement Agreement; and (d) maintaining a post office box address to receive inquiries with respect to the Settlement for a period of two hundred ten days (210) after the Preliminary Approval Date or one hundred twenty (120) days from the Effective Date, whichever is longer.   The Settlement Administrator shall have no obligation to engage in additional efforts to locate a Class Member if a second Notice of Proposed Class Action Settlement is returned.

26. **Cost of Administration of Settlement Fund**.    Subject to Court approval, all costs related to administration of this Settlement Agreement and the costs related to the Settlement Administrator and Notice to Class Members shall be paid from the Settlement Fund in accordance with Section 23 of this Settlement Agreement.

27. **Cy Pres**.    The Parties agree that a *cy pres* fund will be created which includes any residue of the Settlement Fund remaining for any reason, including checks that are not negotiated or are returned and remain undeliverable after one hundred and twenty (120) days following the mailing of the checks to Class Members under Section 24.E. of this Settlement Agreement.  The *cy pres* fund shall be donated, with the approval of the Court, to Legal Aid Bureau, Inc. The Settlement Administrator shall remit the *cy pres* funds to the escrow account of Class Counsel within one hundred thirty (130) days after the checks are mailed to the Class Members pursuant to Paragraph 24.B. of this Settlement Agreement.  Class Counsel shall then remit the funds to the Cy Pres recipient on behalf of the Classes and provide proof of such payment to Westlake's counsel.

28. **Full and Final Settlement.**    The Parties agree that the Action is being voluntarily settled after consultation with experienced legal counsel and that terms of the Settlement Agreement were negotiated at arm's length and in good faith.  It is the intent and purpose of this Settlement Agreement to effect a full and final settlement of the Released Claims. In order to effectuate that purpose, the Parties agree to cooperate with one another and with the Settlement Administrator and use their best efforts to obtain Court approval of the settlement and this Settlement Agreement.

29. **Incentive Payment**.    Westlake agrees that Class Counsel may file a motion, which Westlake will not oppose or comment negatively on, seeking that five thousand dollars

($5,000.00) be paid by the Settlement Administrator from the Settlement Fund to Representative Plaintiff as an incentive payment within five (5) days after the Effective Date. The check shall be payable to "Ashley McDaniels" and delivered by the Settlement Administrator to Class Counsel.

30. **Releases.**   Upon the Effective Date of this Settlement Agreement and without any further action by the Court or by any Party to this Agreement, Representative Plaintiff and the Class Members and all of their spouses, former spouses, administrators, executors, personal representatives, heirs, agents, attorneys, assigns, predecessors and successors, for good and sufficient consideration, the receipt and adequacy of which is acknowledged, shall be deemed to, and shall in fact, have fully remised, released and forever discharged any and all Released Claims, which they, or any of them, had or has or may in the future have or claim to have against the Released Persons.

Without limiting the foregoing, the Released Claims specifically extend to claims that Plaintiff and the Class Members do not know or suspect to exist in their favor at the time that the settlement, and the releases contained herein, become effective.   This paragraph constitutes a waiver of all provisions, rights, and benefits of all state or common-law rules limiting the release of known or unknown claims.  Plaintiff understands and acknowledges, and each Class Member shall be deemed to understand and acknowledge, the significance of the foregoing waivers and/or of any other applicable law relating to limitations on releases.   In connection with such waiver and relinquishment, Plaintiff acknowledges, and each Class Member shall be deemed to acknowledge, that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of this settlement, but that it is their intention to release fully,

finally, and forever all Released Claims, and in furtherance of such intention, the release of the Released Claims shall be and remain in effect notwithstanding the discovery or existence of any such additional or different facts.

31.    **Westlake's Covenant Not to Sue.**  With the exception of such action as may be necessary to enforce the terms of this Settlement Agreement, Westlake covenants and agrees that neither it nor any of its successors, assigns, agents or employees will sue or maintain any action at law or in equity against the Representative Plaintiff, the Repossession Class Members or the obligors on the Charged-Off Accounts that relates to or arises out of the installment sales contracts entered into by members of the Repossession Class or the obligors on the Charged-Off Accounts that are the subject of this Settlement Agreement.

32.    **Representative Plaintiff's and Class Members' Covenant Not to Sue**.  With the exception of such action as may be necessary to enforce the terms of this Settlement Agreement, the Representative Plaintiff and all Class Members agree not to institute, be represented in, participate in, submit, file, or permit to be filed on their behalf, any lawsuit, arbitration, charge, claim, complaint, or other proceeding in which a Released Claim is asserted. In the event that the Representative Plaintiff or any Class Member institutes or is a party to any such action, the claim shall be immediately dismissed with prejudice upon presentation of this Settlement Agreement.

### III.    PROCEDURES FOR EFFECTUATING SETTLEMENT

33.    **Cooperation.**  Westlake and Class Counsel shall reasonably cooperate with each other so that both sides may adequately monitor all aspects of this Settlement Agreement.

34.    **Preliminary Approval and Notice to Classes**.   Within fourteen (14) days of the execution of this Settlement Agreement, the Representative Plaintiff shall file a motion

requesting that the Court enter the Preliminary Approval Order attached hereto as Exhibit C.

35.     **Notices Required Under CAFA.**    Within fifteen (15) days of the Court's Preliminary Approval of this Settlement, Westlake shall serve any required notices under the Class Action Fairness Act, 28 U.S.C. §1715 ("CAFA"), to the applicable regulatory agencies and file a declaration with the Court at least thirty (30) days prior to the Final Approval Hearing stating that the notices were served and identifying the persons notified.

36.     **Opt Out Option and Objections**.

a.      Any potential member of the Classes may elect to be excluded from this settlement and from the Classes by opting out of the Classes.  Any potential Class Member who desires to be excluded from the Classes must give written notice of the election to be excluded to the Settlement Administrator, with copies mailed to Class Counsel and to Westlake's counsel, within ninety (90) days after entry of the Preliminary Approval Order or as otherwise provided in the Preliminary Approval Order.  In order to be valid, the notice of election to opt out must be signed and dated and include the potential Class Member's name, address, account number and the statement "I wish to opt out of the *McDaniels v. Westlake* class action" (or a substantially similar statement).  Anyone who gives a valid and timely notice of his or her election to opt out will not be bound by the terms of this Settlement Agreement, and may not assert an objection to the terms of the settlement.

b.      Any Class Member who wishes to object to the settlement must file a written objection and/or a notice of intention to appear with the Court, and serve copies on Class Counsel and Defendant's counsel.  An objection must set forth in writing a brief, informal statement of the objection, the reasons for the objection, and copies of any papers that the objector intends to present to the Court in support of the objection during the hearing on final

approval of the settlement.  The last day for Class Members to object to the settlement will be ninety (90) days after the entry of the Preliminary Approval Order, or as otherwise provided in the Preliminary Approval Order.

37.    **Final Approval Order and Judgment**.

Following issuance of the Preliminary Approval Order (Exhibit C), the mailing of the Class Notice as set forth herein (Exhibit A) and expiration of the time for opt outs and objections, Plaintiff shall promptly move the Court for entry of the Final Approval Order and Judgment (Exhibit B).

38.    **Non-Disparagement Clause.**

Class Counsel and Representative Plaintiff shall refrain from disparaging Westlake or any of the Released Parties publicly or taking any action designed to harm the public perception of Westlake or any of the Released Parties regarding any issue related to the Settlement Agreement or the Action.  Class Counsel and Representative Plaintiff further agree not to issue press releases, place advertisements or otherwise initiate communications with the media regarding this settlement or the Action.

## IV.    CONDITIONS OF SETTLEMENT

39.    **Approval of the Court**.  This Settlement Agreement is subject to Final Approval by the Court.  If the settlement is approved, the Court will enter a judgment dismissing the claims against Defendant with prejudice.  If this Settlement Agreement or any part of it is materially modified by the Court or is materially modified upon appeal or remand, either Representative Plaintiff or Defendant may terminate this Settlement Agreement pursuant to Paragraph 40.  If no Party timely elects to terminate, then the Parties shall remain bound to proceed with the settlement as so modified.  For purposes of this paragraph, a "material

modification" is one which significantly affects the substantive rights and/or obligations of the party electing termination.  Without limiting the foregoing, (a) any change to the scope of the release set forth in this Settlement Agreement or (b) any change to the Final Approval Order and Judgment, or (c) any increase in the cost of the settlement to be borne by Defendant shall be deemed to be a material modification.  No order or action of the Court pertaining to attorneys' fees or expenses shall be considered to constitute a material modification so long as such order, action or modification does not increase the cost of settlement to be borne by Defendant and does not require that Defendant do anything which is not specifically set forth herein.  Similarly, no order or action of the Court pertaining to the proposed incentive award to Representative Plaintiff shall be considered to constitute a material modification so long as such order, action or modification does not increase the cost of the settlement to be borne by Defendant and does not require that Defendant do anything which is not specifically set forth herein.  Any dispute as to the materiality of any modification or proposed modification of this Settlement Agreement by the Court shall be resolved by the Court.

    40.    **Termination of Agreement**.  This Agreement shall terminate:

    (a)  Automatically if the Court fails to approve the Settlement Agreement;

    (b)  At the option of Representative Plaintiff or Westlake (i) if this Court or any other court materially modifies (or proposes to materially modify) this Settlement Agreement as a condition to approval of the settlement or (ii) for any reason upon the mutual written agreement of the Parties by and through their respective counsel; or

    (c)  At the sole discretion of Westlake, if the obligors on three percent (3%) or more of the credit accounts eligible for inclusion in the Classes elect to opt out of and be excluded from the Classes.  For purposes of the preceding sentence, if one obligor on a credit

account opts out, it shall be treated as if all obligors on that account opted out. In order to exercise such right of withdrawal, Westlake must provide written notice of the election to terminate to the Court and to Class Counsel within fifteen (15) days after the deadline for potential Class Members to opt out as provided in Paragraph 36 above.

41.    **Effect of Termination of Agreement**.    If this Settlement Agreement is terminated or canceled, the Parties shall be deemed to have reverted to their respective status as of August 19, 2011, and they shall proceed in all respects as if this Settlement Agreement had not been executed and the related orders (other than the orders staying proceedings in the Action) had not been entered, preserving in that event all of their respective claims and defenses in this case. Any settlement class that has been certified prior to termination shall automatically be decertified at termination, without prejudice to Representative Plaintiff's right to file a new motion for class certification. Notwithstanding the foregoing, the provisions of Section 20(d) and 20(e) of this Settlement Agreement shall (a) survive any termination of the Settlement Agreement; (b) bind the Parties and the Settlement Administrator and their agents and counsel following any termination of the Settlement Agreement; and (c) be enforceable by the Court following any termination of the Settlement Agreement.

## V.    APPLICATION FOR ATTORNEY'S FEES, COSTS AND DISBURSEMENTS

42.    **Attorney's Fees**.    All attorney's fees, costs and disbursements on behalf of or by Class Counsel shall be paid in accordance with Paragraph 23 above, or in such manner as the Court may direct. Westlake shall not be liable for any fees, costs or disbursements of Class Counsel apart from what is paid from the Settlement Fund.

43.    **Class Counsel Attorney Fees and Costs**.    Subject to approval by the Court, Class Counsel shall seek attorney's fees and costs from the Settlement Fund. Class Counsel

agrees not to seek an award of attorney's fees in excess of one-third (33 1/3%) of the Total Settlement Fund.

44.    **Costs.**    Except as otherwise provided in this Settlement Agreement, Representative Plaintiff, Class Members and Westlake shall each bear his, her or its own costs.

## VI.    MISCELLANEOUS PROVISIONS

45.    **Amendments**.  This Settlement Agreement may be amended or modified only by a written instrument signed by Class Counsel and Westlake or its attorneys.

46.    **Entire Agreement**.   This Settlement Agreement together with Exhibits A, B, and C constitute the entire agreement between the Parties with respect to the subject matter of this Settlement Agreement and supersede all prior negotiations, communications, and agreements between the Parties.  No Party has entered into this Settlement Agreement in reliance upon any representations, warranties or inducements other than the representations, warranties, and covenants contained and memorialized in this Settlement Agreement and its exhibits.

47.    **Extensions of Time.**  The Parties may request that the Court allow reasonable extensions of time to carry out any of the provisions of the Settlement Agreement.

48.    **Representative Plaintiff's Authority.**   Class Counsel, on behalf of the Classes, is expressly authorized to take all appropriate actions required or permitted to be taken by the Classes pursuant to this Settlement Agreement to effectuate its terms, and is also expressly authorized to enter into any modifications or amendments to this Settlement Agreement on behalf of the Classes.

49.    **Counterparts**.   This Settlement Agreement may be executed in one or more counterparts.  All executed counterparts shall be deemed to be one and the same instrument.  The attorneys for the Parties shall exchange among themselves original executed counterparts and a

complete set of original executed counterparts shall be filed with the Court in connection with the motion to approve the Settlement Agreement, except that a photographic or digital copy shall be sufficient if this Settlement Agreement is filed electronically.

50. **Binding Nature**. This Settlement Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of the Parties.

51. **Construing the Agreement**. This Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it may have been drafted initially by counsel for one of the Parties. It is acknowledged that all Parties have contributed substantially to the preparation of this Settlement Agreement.

52. **Applicable Law**. All the terms of this Settlement Agreement shall be governed by and interpreted in accordance with the laws of the State of Maryland, exclusive of choice of law principles, and applicable federal law.

53. **Headings**. The captions and paragraph headings employed in this Settlement Agreement are for convenience only, are not part of the Settlement Agreement, and shall not be used in construing or interpreting the Agreement.

54. **Jurisdiction**. The Parties consent to the jurisdiction of the Court for the purpose of enforcing this Settlement Agreement and/or implementing the settlement embodied in this Settlement Agreement and consent to the continuing jurisdiction of the Court following the Effective Date over any disputes which later arise in connection with this Settlement Agreement or actions taken pursuant to the Settlement Agreement.

55. **No Waiver Of Right To Arbitrate.** In the event that the Court certifies the Classes for settlement purposes in the Preliminary Approval Order but the Settlement Agreement is not finally approved by the Court and fully implemented, Westlake's participation in

proceedings in the Action regarding the Court's consideration, approval or implementation of the settlement shall not constitute a waiver of or estoppel against Westlake's right to demand arbitration of any dispute with a potential member of the Classes whose credit contract contains an arbitration provision. Similarly, if this Settlement Agreement is approved by the Court and implemented, Westlake's participation in proceedings in the Action regarding the Court's consideration, approval or implementation of the settlement shall not constitute a waiver of or estoppel against Westlake's right to demand arbitration of any dispute with a potential member of the Classes who elected to opt out of this class-action settlement.

IN WITNESS WHEREOF, the Parties and Class Counsel have caused this Settlement Agreement to be executed.

FOR THE PROPOSED CLASSES:

By: _____
     CORY L. ZAJDEL
     Date: 1 / 26 / 12

_____
ASHLEY MCDANIELS, individually
and for the proposed Classes

Date: 1 / 23 / 12

FOR THE DEFENDANT
WESTLAKE SERVICES, LLC

By: _____
     Michael Pavlin, Authorized Agent
     Date: _____

proceedings in the Action regarding the Court's consideration, approval or implementation of the settlement shall not constitute a waiver of or estoppel against Westlake's right to demand arbitration of any dispute with a potential member of the Classes whose credit contract contains an arbitration provision. Similarly, if this Settlement Agreement is approved by the Court and implemented, Westlake's participation in proceedings in the Action regarding the Court's consideration, approval or implementation of the settlement shall not constitute a waiver of or estoppel against Westlake's right to demand arbitration of any dispute with a potential member of the Classes who elected to opt out of this class-action settlement.

IN WITNESS WHEREOF, the Parties and Class Counsel have caused this Settlement Agreement to be executed.

FOR THE PROPOSED CLASSES:

FOR THE DEFENDANT:

WESTLAKE SERVICES, LLC

By: _____
CORY L. ZAJDEL
Date: _____

By: _____
Michael Pavlin, Authorized Agent
Date: 1/26/2012

_____
ASHLEY MCDANIELS, individually
and for the proposed Classes

Date: _____

4823-5423-6430 v.2
1/26/2012 9:39 AM

32

**EXHIBITS**

A.     Class Notice

B.     Proposed Final Approval Order and Judgment

C.     Proposed Preliminary Approval Order

## NOTICE OF PENDENCY OF CLASS ACTION,
## PROPOSED SETTLEMENT, AND HEARING

TO:     ALL CONSUMERS WHOSE VEHICLES WERE REPOSSESSED AND SOLD
        OR WERE CHARGED AN INTEREST RATE GREATER THAN 24% OR A
        CONVENIENCE FEE BY WESTLAKE SERVICES, LLC D/B/A WESTLAKE
        FINANCIAL SERVICES PRIOR TO JULY 22, 2011 IN CONNECTION WITH
        AN INSTALLMENT SALE CONTRACT GOVERNED BY MARYLAND'S
        CREDIT GRANTORS CLOSED END CREDIT CONTRACT PROVISION.

**THIS NOTICE MAY AFFECT YOUR RIGHTS – PLEASE READ IT CAREFULLY**

This notice summarizes a proposed class-action settlement of claims brought against Westlake
Services, LLC d/b/a Westlake Financial Services ("Westlake") involving post-repossession
notices of sale provided to Westlake customers following the repossession of motor vehicles
purchased in Maryland and the charging of interest rates and fees alleged to violate Maryland
law.  The name of the case is <u>McDaniels v. Westlake Services, LLC</u>, Civil Action No. 1:11-cv-
1837-BEL.

This lawsuit is a class action brought on behalf of two Classes of consumers against Westlake.
This is not a lawsuit against you.  The Court has not decided that Westlake did anything wrong.
The purpose of this notice is to inform you of the settlement, its benefits for members of the
Class and your options.

### 1.     WHAT IS THIS LAWSUIT ABOUT?

Plaintiff Ashley McDaniels ("Plaintiff") filed a lawsuit against Westlake.  The Complaint alleges
that Westlake acquired installment sale contracts for the purchase of motor vehicles from
Maryland motor vehicle dealers, in which the contract contained an election of Maryland's
Credit Grantor Closed End Credit Provisions, Subtitle 10 of Title 12 of the Commercial Code
("CLEC").    The Complaint alleges that Westlake issued notices in connection with the
repossession of the motor vehicles that failed to disclose all of the information required under
CLEC.  The Complaint also alleges that Westlake assessed interest rates greater than twenty-four
percent (24%) and fees that violated Maryland law.  Plaintiffs asserted four claims for relief on
behalf of the Classes alleging: (1) violation of CLEC; (2) breach of contract; (3) violation of
Maryland's Consumer Protection Act, Md. Comm. Law Code Ann. § 13-101, <u>et seq.</u>; and (4)
restitution and unjust enrichment.

Westlake has denied all allegations of wrongdoing and liability.  Westlake contends that
Plaintiff's claims have no merit and that Westlake would prevail in the lawsuit.  The Court has
not ruled on the merits of Plaintiff's claims or Westlake's defenses.  There has been no finding
that Westlake violated any law in its conduct toward the Plaintiff or other potential Class
Members.

Counsel for the Plaintiff ("Class Counsel") has investigated the facts and the applicable law
regarding the matters raised in the lawsuit, including the defenses raised by Westlake.  Plaintiff
and Class Counsel have taken into account the risk of litigation and defenses available to
Westlake, as well as the difficulties and delays inherent in such litigation and the likelihood of

protracted appeals.  Class Counsel entered into a multi-day mediation session with Westlake that was conducted by a United States Magistrate Judge in the District of Maryland.  As a result of that mediation, Class Counsel, Representative Plaintiff and Westlake agreed upon terms for a proposed settlement.  Class Counsel has determined that the mediated settlement is fair, reasonable, and adequate and in the best interest of the Representative Plaintiff and the Classes. The Representative Plaintiff concurs in this determination.

Plaintiff and Westlake have entered into a Settlement Agreement which, if approved by the Court, will fully and finally resolve the claims asserted by the Plaintiff against Westlake, on behalf of herself and anyone else in the Settlement Classes.

2.     WHO IS A SETTLEMENT CLASS MEMBER?

The parties have agreed and the Court has ruled that, for settlement purposes only, this lawsuit may be maintained as a class action, subject to final and permanent approval at the conclusion of the settlement process.  The Court has preliminarily certified, for settlement purposes, the following Settlement Classes:

> *Repossession Class*
>
> All persons whose consumer goods were repossessed by Westlake on or before July 22, 2011 in connection with a credit contract governed by Subtitle 10 of Title 12 of the Maryland Commercial Law Article.
>
> *Interest Rate/Fee Class*
>
> All persons who were charged interest at a rate greater than twenty-four percent (24%) and/or a convenience fee in connection with consumer credit contracts entered prior to July 22, 2011 that were financed by, assigned to, or acquired by Westlake and were governed by Subtitle 10 of Tile 12 of the Maryland Commercial Law Article.

THIS NOTICE IS BEING SENT TO YOU IN THE BELIEF THAT YOU ARE A MEMBER OF ONE OR BOTH SETTLEMENT CLASSES. [i]

3.     WHO REPRESENTS THE SETTLEMENT CLASS?

The Court has appointed Cory L. Zajdel, of the firm Z Law, LLC to serve as Class Counsel for the Settlement Classes.  You may contact Cory L. Zajdel at the address or telephone number provided below.  You also have the right to consult with your own attorney, at your own expense, and you may enter an appearance through your own attorney if you desire.

### 4. WHAT ARE THE SETTLEMENT TERMS?

Westlake has already: (1) modified its repossession practices; (2) waived all interest and outstanding balances and/or deficiencies that were owed in connection with the Repossession Class credit accounts and dismissed any pending collection lawsuits against Repossession Class Members; (3) waived all outstanding balances and/or deficiencies that were owed in connection with certain Charged-Off Accounts identified in the Settlement Agreement; (4) contacted the three national credit reporting agencies (Equifax, Trans Union and Experian) and requested deletion of the trade lines relating to the Repossession Class and Charged-off Accounts; (5) ceased charging a convenience fee to Maryland CLEC consumers; (6) waived all convenience fees charged to Class Members and applied these payments toward principal; (7) ceased charging more than 24% interest to Maryland CLEC consumers; (8) recalculated all Interest Rate/Fee Class credit accounts that exceeded twenty-four percent (24%) interest as if they were issued at 24%. In sum, Westlake has already provided Class Members with over $1,850,000 in credits, waivers and adjustments to Class Members' accounts and $221,656 in refunds to Class Members.

In addition, Westlake will place an additional Five Hundred Twenty Thousand Dollars ($520,000.00) into a Settlement Fund for the benefit of the Interest Rate/Fee Class Members who do not opt-out of this settlement ("Eligible Class Member"). After deductions from the Settlement Fund of a court-approved award of attorneys' fees and expenses to Class Counsel, any incentive award to Plaintiff and costs of administration by the Settlement Administrator, the Settlement Fund will be divided among the Eligible Class Members, with each receiving a check. Plaintiff may request that the Court reimburse Class Counsel for actual expenses and award up to 1/3 of the Total Monetary Relief of the settlement in attorneys' fees and $5,000 to Plaintiff Ashley McDaniels. Amounts left over after full distribution to Eligible Class Members will be paid through a charitable contribution to Legal Aid Bureau, Inc.

### 5. DO I NEED TO DO ANYTHING TO REMAIN A MEMBER OF THE SETTLEMENT CLASS?

You are receiving this notice because it is believed that you are a member of one or both of the Settlement Classes. You do not need to do anything to remain a member of one or both of the Settlement Classes. You will remain a member of one or both of the Settlement Classes unless you take steps to exclude yourself. If you remain a member of the Settlement Classes, you will be entitled to the relief described above for the Class or Classes of which you are a member, and you will be bound by any judgment entered.

### 6. HOW CAN I EXCLUDE MYSELF FROM THE SETTLEMENT?

If you do not want to receive the relief described above you must mail a written request for exclusion **on or before [Preliminary Approval + 90 days]**. Your exclusion request must: (1) be signed and dated; (2) include your name and address; (3) include your account number or last four digits of your Social Security Number; and (4) include the following statement: "I want to opt out of the <u>McDaniels v. Westlake</u> class action." No request for exclusion will be valid unless this statement (or a substantially similar statement) and all of the other required information is included. The Court will exclude from the Settlement Classes any member who timely and

properly requests exclusion.    Requests for exclusion must be mailed to the settlement administrator, Class Counsel and Westlake's Counsel as follows:

> The Casey Group, Ltd.
> 502 Washington Avenue, Suite 650
> Towson, MD 21204
>
> Cory L. Zajdel, Esquire
> Z Law, LLC
> 10811 Red Run Blvd., Suite 204
> Owings Mills, Maryland  21117
>
> Gerard J. Gaeng, Esquire
> Rosenberg | Martin | Greenberg, LLP
> 25 S. Charles Street, Suite 2115
> Baltimore, Maryland  21201

Your request for exclusion must be sent by First Class U.S. Mail postage prepaid, postmarked **on or before [Preliminary Approval + 90 days]**.    Your exclusion request will not be valid if mailed to any other address.

By electing to be excluded from the Settlement Class, you: (1) will not share in any recovery if the settlement is approved; (2) will not be bound by any further orders or judgments entered; and (3) will not be entitled to comment on or object to any proposed settlement.

7.    **WHAT IS THE SETTLEMENT APPROVAL PROCEDURE?**

A Fairness Hearing will be held on _____, 2012 at _____ a.m./p.m. before the Honorable Benson E. Legg, United States District Judge for the United States District Court for the District of Maryland—Northern Division, for the purpose of determining whether the settlement should be approved and whether to award attorneys' fees and costs to Class Counsel and incentive awards to Plaintiff.    You may attend the hearing, but you do not have to.

If you exclude yourself from the Settlement Classes, you are not entitled to comment on or object to the settlement, the award of fees and costs to Class Counsel and any incentive award to Plaintiff and you will not be heard at the Fairness Hearing.    If the Court approves the settlement, the approval will bind all members of the Settlement Classes except those who have excluded themselves.

**If you do not object to the settlement or any other matter to be considered at the final approval hearing, you do not need to attend the hearing or take any further action.**

If you do not exclude yourself from the Settlement Class, you may object to any aspect of the proposed settlement or seek to intervene in the case as a party.    You may do so either on your own or through counsel hired at your own expense.    If you wish to assert an objection or to intervene, you must file a written objection or request for intervention with the Clerk of the

Court, United States District Court, District of Maryland—Northern Division, Garmatz Courthouse, 101 W. Lombard Street, Baltimore, MD 21201. Copies of your objection or request must also be served by mail or personally served on Class Counsel, Cory L. Zajdel, Z Law, LLC, 10811 Red Run Blvd., Suite 204, Owings Mills, MD 21117, and on Westlake's counsel, Gerard J. Gaeng, Rosenberg | Martin | Greenberg, LLP, 25 South Charles Street, Suite 2115, Baltimore, Maryland 21201. Objections and requests for intervention must be filed and served **on or before [Preliminary Approval + 90 days]**. If you or your counsel intend to appear at the hearing, you must also file with the Court and serve on Class Counsel and Westlake's counsel at the addresses listed above, **on or before [Preliminary Approval + 90 days]**, a notice of intention to appear setting forth your name and address (and, if applicable, the name, address and telephone number of your attorney), a brief statement of your objection, and copies of any papers that you intend to present to the Court in support of the objection at the Fairness Hearing. If you do not comply with these procedures, you will not be permitted to be heard at the hearing or otherwise to contest approval of the settlement, the award of fees and costs to class counsel or the incentive awards to Plaintiffs, to intervene in the action or to appeal from any orders or judgments of the Court.

### 8.    RELEASE OF CLAIMS.

If the settlement is approved and you do not exclude yourself from the settlement, you will be bound by the terms of the settlement and any order of the Court that approves the settlement and dismisses the litigation. If the settlement is approved, the Court will enter a judgment dismissing with prejudice all claims in the litigation against Westlake. Under the terms of the Settlement Agreement, Class Members in the Repossession Class and Class Members whose accounts were Charged-Off Accounts (as described in the Settlement Agreement) will release Westlake with respect to the claims existing at the time that the Settlement Agreement was entered on January 19, 2012 that (1) were raised or could have been raised by the Representative Plaintiff or any member of the Classes, (2) relate to or arise out of the facts and circumstances pertaining to the automobile installment sales contracts at issue in this case, or (3) relate to the administration of the settlement.

With respect to the other members of the Interest Rate/Fee Class, Class Members will release Westlake with respect to all claims that arise out of or relate in any manner to (1) the matters directly or indirectly alleged in the lawsuit, (2) the interest rate or convenience fees charged by Westlake prior to July 22, 2011, or (3) the administration of the settlement.

The releases by all Class Members release Westlake and its present, former and future direct and indirect parent companies, affiliates, subsidiaries, divisions, and their current and former officers, directors, owners, employees, agents, attorneys, vendors, independent contractors, insurers, predecessors, successors and assigns. The full releases are contained in the Settlement Agreement.

Until the Fairness Hearing is held and the Court makes a final decision as to whether the Settlement should be approved, the Court has ordered that potential Class Members may not initiate or prosecute any legal proceedings against Westlake or the other Released Parties based on the Released Claims as described above and set forth in full in the Settlement Agreement.

9.    **INFORMATION THAT MUST BE INCLUDED IN ANY DOCUMENT THAT YOU SEND REGARDING THE CASE.**

In sending any document to the Court, to Class Counsel, or to Westlake's counsel, it is important that both your envelope and any document inside contain the following case name and identifying numbers: <u>McDaniels v. Westlake Services, LLC</u>, Civil Action No. 1:11-cv-1837-BEL.  In addition, you must include your full name and address.  You may also include a telephone number at which you can be reached.

10.    **WHAT IF I HAVE MOVED OR CHANGED MY MAILING ADDRESS?**

If you have moved and/or changed your mailing address since your most recent interaction with Westlake, you must write to the settlement administrator at The Casey Group, Ltd., 502 Washington Avenue, Suite 650, Towson, MD 21204.  Include your full name and both old and new addresses.  Please also include a telephone number at which you can be reached.  You may also call or write Class Counsel at the address or number below.

11.    **WHERE DO I GET ADDITIONAL INFORMATION?**

If you have any questions concerning the matters dealt with in this notice, please direct your inquiries <u>in writing</u> or <u>by telephone</u> to the following attorney for the Classes:

Cory L. Zajdel
Z LAW, LLC
10811 Red Run Blvd., Suite 204
Owings Mills, Maryland  21117
(443) 213-1977
<u>www.zlawmaryland.com</u>

The foregoing is only a summary of the lawsuit and the proposed settlement.  You may seek the advice of your own attorney, at your expense, if you so desire.  For more detailed information, you may review the papers on file in the lawsuit, which may be examined and copied during regular office hours at the office of the Clerk, United States District Court, District of Maryland—Northern Division, Garmatz Courthouse, 101 W. Lombard Street, Baltimore, MD 21201.

**DO NOT CALL OR WRITE TO THE CLERK OF THE COURT OR TO WESTLAKE. TELEPHONE REPRESENTATIVES ARE NOT AUTHORIZED TO CHANGE THE TERMS OF THE SETTLEMENT OR THIS NOTICE. IF YOU HAVE QUESTIONS OR WOULD LIKE TO DISCUSS THE SETTLEMENT PLEASE CONTACT CLASS COUNSEL AT THE NUMBER OR ADDRESS LISTED IN PARAGRAPH 11.**

Dated:  _____ ____, 2012        Clerk of the United States District Court for the
                                           District of Maryland–Northern Division

**EXHIBIT B**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | |
|---|---|
| ASHLEY MCDANIELS, *et al.* | |
| Plaintiffs, | |
| v. | |
| WESTLAKE SERVICES, LLC<br>D/B/A WESTLAKE FINANCIAL SERVICES | Case No. 1:11-cv-1837-BEL |
| Defendant. | |

## FINAL ORDER AND JUDGMENT
## <u>APPROVING SETTLEMENT AND CERTIFYING SETTLEMENT CLASSES</u>

Upon review and consideration of the Settlement Agreement dated January 19, 2012, by and between the Representative Plaintiff Ashley McDaniels (acting individually and on behalf of the Classes defined below) and Defendant Westlake Services, LLC d/b/a Westlake Financial Services ("Westlake"), the memoranda submitted by counsel and arguments heard during the Fairness Hearing on _____ ___, 2012, and the lack of any objections to the settlement,

IT IS HEREBY ORDERED and adjudged as follows:

1.    Pursuant to FED. R. CIV. P. 23(e), the settlement of this action, as embodied in the terms of the Settlement Agreement is hereby finally approved as a fair, reasonable, and adequate settlement of this case in light of the factual, legal, practical and procedural considerations raised by this case.  The Settlement Agreement is incorporated by reference into this Order (with capitalized terms defined as set forth in the Settlement Agreement) and is hereby adopted as an Order of this Court.

2.    For the purpose of settlement, as addressed further below, pursuant to FED. R. CIV. P. 23(a) and (b)(3), the Court hereby finally certifies the following Classes:

> *Repossession Class*
>
> All persons whose consumer goods were repossessed by Westlake on or before July 22, 2011 in connection with a credit contract governed by Subtitle 10 of Title 12 of the Maryland Commercial Law Article.
>
> *Interest Rate/Fee Class*
>
> All persons who were charged interest at a rate greater than twenty-four percent (24%) and/or a convenience fee in connection with consumer credit contracts entered prior to July 22, 2011 that were financed by, assigned to, or acquired by Westlake and were governed by Subtitle 10 of Tile 12 of the Maryland Commercial Law Article.
>
> Excluded from the Classes are those individuals who now are, or ever have been, an officer of Westlake as well as the spouses, parents, siblings and children of all such individuals.

3.    The Court finds that the mailed notice given to potential Class Members who were involved in transactions with Defendant was the best notice practicable under the circumstances and satisfies the requirements of due process and FED. R. CIV. P. 23.

4.    The Court appoints Ashley McDaniels as Representative Plaintiff of the Classes and finds that she meets the requirements of FED. R. CIV. P. 23.

5.    The Court appoints the following lawyer as counsel to the Classes and finds that this attorney meets the requirements of FED. R. CIV. P. 23:

> Cory L. Zajdel (Fed. Bar No. 28191)
> Z LAW, LLC
> 10811 Red Run Blvd., Suite 204
> Owings Mills, MD 21117

6.    The Court further finds that all the requirements for class certification are met in

2

this case:

a.    **The Prerequisites of FED. R. CIV. P. 23**:

FED. R. CIV. P. 23(a) requires the following four threshold elements be met in order for a class to qualify for certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claim or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative will fairly and adequately protect the interests of the class.

**FED. R. CIV. P. 23(a)(1) (numerosity)**: The Repossession Class in this action consists of all persons whose consumer goods were repossessed by Westlake on or before July 22, 2011 in connection with an installment sale contract governed by Maryland's Credit Grantor Closed End Credit Provisions ("CLEC"), MD. CODE ANN., COMM. LAW. § 12-1001 *et seq.*  This Court finds that 219 transactions meet the Repossession Class definition and, therefore, the Repossession Class is so numerous that joinder would be impracticable.  The Interest Rate/Fee Class in this action consists of all persons who were charged interest at a rate greater than twenty-four percent (24%) and/or a convenience fee in connection with consumer credit contracts entered prior to July 22, 2011 that were financed by, assigned to, or acquired by Westlake and were governed by the CLEC.  This Court finds that 3,050 transactions meet the Interest Rate/Fee Class definition and, therefore, the Class is so numerous that joinder would be impracticable.  Thus, the Court finds that the numerosity requirement under FED. R. CIV. P. 23(a)(1) is satisfied.

**FED. R. CIV. P. 23(a)(2) (commonality of facts and law)**: Representative Plaintiff alleged in this case that Westlake effected the repossession of Repossession Class Member vehicles through form notices of the pending sale and, thereafter, form notices of the claimed deficiency that failed to comply with all of the requirements of CLEC and also violated Maryland's Consumer Protection Act, MD. CODE ANN.,

COMM. LAW § 13-101 *et seq.* Representative Plaintiff also alleged in this case that Westlake charged a rate of interest and certain fees in servicing Interest Rate/Fee Class Member credit accounts that were greater than allowed under Maryland law. The Court finds that a determination of the legality of Defendant's practices concern common questions of law and fact. As such the Court finds the requirements of FED. R. CIV. P. 23(a)(2) are satisfied.

**FED. R. CIV. P. 23(a)(3) (typicality of claims and defenses):** This factor focuses on the consideration of whether the representative's interests are truly aligned and consistent with those of Class Members. In this case, Representative Plaintiff's claims are typical of the claims of the members of the Repossession and Interest Rate/Fee Classes. Thus, Representative Plaintiff's interests are aligned and consistent with those of the Class Members. The Court finds that the requirements of typicality under FED. R. CIV. P. 23(a)(3) are satisfied.

**FED. R. CIV. P. 23(a)(4) (adequate representation):** Representative Plaintiff's claims are not conflicting or inconsistent with any Class Member claims. Moreover, the Court finds that the Classes are represented by able counsel with extensive experience in class-action litigation. Both the Representative Plaintiff and Class Counsel have adequately represented the interests of the Classes. Thus, the Court finds that the requirements of adequate representation under FED. R. CIV. P. 23(a)(4) are satisfied.

**b.    Requirements of FED. R. CIV. P. 23(b):**

After the requirements of FED. R. CIV. P. 23(a) are found to exist, the Court must determine pursuant to FED. R. CIV. P. 23(b) whether this case may be maintained as a class action under FED. R. CIV. P. 23(b)(1), (b)(2) or (b)(3).

**FED. R. CIV. P. 23(b)(3):** This Court finds that the allegations in this case focus on uniform and consistent practices and that there are common, over-riding legal claims

4

held by all Class Members regarding the legality of the form repossession notices and the post-sale accounting in the transactions of the members of the Repossession Class, as well as the interest rates and servicing charges assessed to members of the Interest Rate/Fee Class. The Court further finds that the pursuit of numerous individual cases which would be essentially identical would be a waste of judicial time and resources. In summary, common questions predominate over individualized questions and a class-action suit is the superior vehicle to efficiently adjudicate this lawsuit. Certification under FED. R. CIV. P. 23(b)(3) is appropriate.

7.     This Court finds that the settlement is fair, adequate, and reasonable after due consideration of: the Representative Plaintiff's likelihood of success at trial; the range of Representative Plaintiff's possible recovery; the range of possible recovery at which a settlement is fair, adequate, and reasonable; the complexity, expense and duration of the litigation; the substance and amount of opposition to the settlement and the state of proceedings at which the settlement was achieved; the lack of any timely objections; all written submissions, affidavits and arguments of counsel; and after notice and a hearing. Accordingly, the Settlement Agreement is approved and shall govern all issues regarding the settlement and all rights of the parties to this settlement, including the Class Members. Each Class Member shall be bound by the Agreement including the releases in the Settlement Agreement, which are hereby incorporated by reference and become part of the final judgment in this action.

8.     The parties are hereby ORDERED to carry out their respective obligations under the Settlement Agreement. The Settlement Administrator is hereby DIRECTED to pay all Interest Rate/Fee Class Members who are obligors on the Eligible Credit Accounts within fifteen (15) days after the Effective Date in accordance with the formula set forth in the Settlement Agreement.

9.     In accordance with the Settlement Agreement, within five (5) days after the Effective Date, the Settlement Administrator shall pay or take all reasonable steps to transfer,

assign or release the following funds, out of the Settlement Fund, to the Trust Account of Z Law, LLC:

        (i)       Attorneys' fees totaling _____.

        (ii)     Litigation expenses totaling _____.

        (iii)    Incentive payment totaling _____ for the Representative Plaintiff Ashley McDaniels to award the Representative Plaintiff for her participation in this action.

10. The Court has reviewed the invoice of the Settlement Administrator submitted with Plaintiff's Motion for Final Approval and approves the payment of that invoice in the amount of $ _____ and authorizes the Settlement Administrator to release monies in that amount to the Settlement Administrator's own operating account upon receipt of notice from both Plaintiff's and Defendant's counsel that the Effective Date has been reached.

11. The Court hereby approves the protocol for distributing the unclaimed settlement funds set forth in the Settlement Agreement as fair, reasonable, and warranted under the circumstances. In accordance with the Settlement Agreement, any residue from the Settlement Fund shall create a *cy pres* fund. The *cy pres* fund shall be donated to Legal Aid Bureau, Inc. in accordance with the terms of the Settlement Agreement.

12. Pursuant to FED. R. CIV. P. 54(b), all Released Claims against the Released Persons (as those terms are defined in the Settlement Agreement) are hereby dismissed on the merits and with prejudice.

13. Each and every Class Member is permanently enjoined from bringing, joining, assisting in, or continuing to prosecute against any of the Released Persons for any of the Released Claims.

14. Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement.

15. This Court retains jurisdiction of all matters relating to the interpretation,

6

administration, implementation, effectuation and enforcement of the Settlement Agreement.  The Court further retains jurisdiction to enforce this Order.


Dated: _____ _____, 2012.



                                          _____
                                          Benson E. Legg
                                          United States District Judge

**EXHIBIT C**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | |
|---|---|
| ASHLEY MCDANIELS, *et al.* | |
| Plaintiffs, | |
| v. | |
| WESTLAKE SERVICES, LLC D/B/A WESTLAKE FINANCIAL SERVICES | Case No. 1:11-cv-1837-BEL |
| Defendant. | |

**ORDER PRELIMINARILY APPROVING SETTLEMENT, CERTIFYING CLASSES FOR SETTLEMENT PURPOSES, APPOINTING CLASS COUNSEL AND SETTLMENT ADMINISTRATOR, AND SETTING SCHEDULE WITH RESPECT TO NOTICE, SETTLEMENT HEARING AND ADMINISTRATION**

After review and consideration of the Settlement Agreement (the "Agreement") dated January 19, 2012, relating to claims raised against Defendant Westlake Services, LLC d/b/a Westlake Financial Services ("Westlake"), and upon application of Representative Plaintiff Ashley McDaniels ("Representative Plaintiff"), with good cause appearing, THIS COURT FINDS and ORDERS as follows:

1.      The terms of the Agreement, and the Settlement provided for therein, are preliminarily approved as fair, reasonable and adequate, subject to further consideration thereof at the Fairness Hearing described at Paragraph 20 of this Order.

2.      The definitions set forth in the Agreement are hereby incorporated by reference into this Order.

3.      For purpose of this Settlement and without prejudice to the Defendant's right to contest class certification in the event that the proposed Settlement is not fully implemented, the Court hereby certifies the following Classes in accordance with the Agreement, and pursuant to FED. R. CIV. P. 23(a) and 23(b)(3):

*Repossession Class*

All persons whose consumer goods were repossessed by Westlake on or before July 22, 2011 in connection with a credit contract governed by Subtitle 10 of Title 12 of the Maryland Commercial Law Article.

*Interest Rate/Fee Class*

All persons who were charged interest at a rate greater than twenty-four percent (24%) and/or a convenience fee in connection with consumer credit contracts entered prior to July 22, 2011 that were financed by, assigned to, or acquired by Westlake and were governed by Subtitle 10 of Tile 12 of the Maryland Commercial Law Article.

Excluded from the Classes are those individuals who now are, or ever have been, an officer of Westlake as well as the spouses, parents, siblings and children of all such individuals.

4.      For Settlement purposes only and without prejudice to the Defendant's right to contest class certification in the event that the proposed Settlement is not fully implemented, the Court finds, pursuant to the Agreement, that:

(a)      the Classes are so numerous that joinder of all members is impracticable;

(b)      there are questions of law or fact common to the Classes;

(c)      the claims of the Representative Plaintiff are typical of the claims of the Classes that Representative Plaintiff seeks to certify; and

(d)      Representative Plaintiff and her counsel will fairly and adequately protect the interests of the Classes.

The Court further finds that:

(e)      the questions of law or fact common to the members of the Classes and which are relevant for Settlement purposes, predominate over the questions affecting only individual members; and

(f)      certification of the Classes is superior to other available methods for the fair and efficient adjudication of this controversy.

5.      For the purpose of preliminary approval and all matters relating to the Settlement of this Action, and without prejudice to the Defendant's right to contest the appointment of Plaintiff as the Representative of the Classes and/or the appointment of Class Counsel in the event that the proposed Settlement is not fully implemented, until further order of the Court, Plaintiff Ashley McDaniels shall be the Representative of the Classes and Representative Plaintiff's counsel of record is appointed as counsel for the Classes. The law firm representing the Classes is:

> Cory L. Zajdel (Fed. Bar No. 28191)
> Z LAW, LLC
> 10811 Red Run Blvd., Suite 204
> Owings Mills, MD 21117

6.      The Casey Group, Ltd., 502 Washington Avenue, Suite 650, Towson, MD 21204 Telephone No. (410)825-2226, is hereby appointed to serve as Settlement Administrator.

7.      Pursuant to the terms of the Agreement, Westlake is hereby directed to prepare and provide to the Settlement Administrator and Class Counsel a Class List within fourteen (14) business days of the later of (a) entry of this Order, and (b) the receipt by Westlake's counsel of written notice from the Settlement Administrator that it agrees to be bound by the confidentiality provisions in Section 20 of the Agreement.

8.      The Settlement Administrator shall comply with the provisions of the Agreement, maintain the confidentiality of the Class List and the Class Account Files and shall use the information contained in the Class List and the Class Account Files solely for purposes of implementing this Settlement and for no other purposes whatsoever.

9.      Within thirty (30) calendar days of entry of this Order, pursuant to the procedures detailed in the Agreement, Westlake is hereby directed to provide Class Counsel with true and accurate copies of a reasonable sample of the records of credit accounts of obligors who are

potential members of the Classes.

10.    Within thirty (30) calendar days of the entry of this Order, pursuant to the procedures detailed in the Agreement, the Settlement Administrator shall provide notice of this Settlement and of the Fairness Hearing described below to all potential Class Members by mailing to each person identified on the Class List a copy of the Notice of Pendency of Class Action, Proposed Settlement and Hearing (the "Class Notice"), substantially in the form attached as Exhibit A to the Settlement Agreement.

11.    All costs and expenses of printing, preparing and mailing the Class Notice, and the reasonable costs and expenses of the Settlement Administrator and other related administrative expenses shall be borne as set forth in the Agreement.

12.    Prior to the Fairness Hearing described in paragraph 20 herein, Representative Plaintiff's counsel shall serve and file a sworn statement of the Settlement Administrator evidencing compliance with the provisions of this Order concerning the mailing of the Class Notice.

13.    Notice to potential Class Members in accordance with the provisions of the Agreement and paragraph 10 herein is hereby found to be:  (a) the best notice practicable under the circumstances, (b) due and sufficient notice of this Order to all persons affected by and/or entitled to participate in the Settlement, and (c) in full compliance with the notice requirement of FED. R. CIV. P. 23 and due process.

14.    Any potential Class Member wishing to be excluded from the Classes shall mail a request for exclusion ("Request for Exclusion") to the Settlement Administrator, postmarked not later than ninety (90) days after entry of this Order and addressed to the Settlement Administrator, with copies to Class Counsel and Westlake's counsel.  In order to be valid, the

Request for Exclusion must be signed and dated and include the potential Class Member's name, address, account number and the statement "I wish to opt out of the *McDaniels v. Westlake* class action" (or a substantially similar statement). Any potential Class Member who does not properly and timely request exclusion shall be included in one or both of the Classes as appropriate and shall be bound by any orders and judgments entered in the Action. The specific date and deadline for requesting exclusion by a potential Class Member shall be set forth in the Notice.

15.     Not later than ninety-five (95) days after entry of this Order, the Settlement Administrator shall:

> (a)     notify in writing Defendant's counsel and Class Counsel regarding the names of potential Class Members, if any, who request exclusion;

> (b)     file with the Court a sworn statement listing all persons who have submitted timely requests for exclusion; and

> (c)     provide copies of all Requests for Exclusion received by it to Defendant's counsel and Class Counsel. The originals of all Requests for Exclusion shall be retained by the Settlement Administrator unless and until such originals are delivered to Representative Plaintiff's counsel following the Settlement Effective Date.

16.     To effectuate the Settlement and the Notice provided for herein, the Settlement Administrator shall lease and maintain a post office box of adequate size. Notice to the Class shall designate said post office box for Requests for Exclusion and for all purposes of communicating with the Settlement Administrator. The Settlement Administrator shall be responsible for the receipt of all Requests for Exclusion and other written communications from Class Members and shall preserve all such communications until administration is complete or further order of the Court. All written communications received from potential Class Members and all written responses to inquiries by potential Class Members relating to the Agreement and Settlement shall be available at all reasonable times for inspection and copying by Defendant's

counsel and Class Counsel, subject to further order of the Court if issues of privilege or confidentiality arise. Notice to potential Class Members shall designate the Settlement Administrator, Class Counsel and counsel for Defendant as the persons that shall receive Requests for Exclusion from potential Class Members.

17.     In order to be deemed a Class Member entitled to participate in the Settlement as set forth in the Agreement, in the event that the Settlement is effected in accordance with all of the terms and conditions thereof, potential Class Members need not take any affirmative action, but shall not opt-out of or request exclusion from the Settlement.

18.     All other events contemplated under the Agreement to occur after this Order and before the hearing described in paragraph 20 shall be governed by the Agreement to the extent not inconsistent with this Order.

19.     Memoranda in support of the Settlement, petitions for attorney fees and reimbursement of expenses by Representative Plaintiff's counsel, requests for any Representative Plaintiff award and to approve a *cy pres* recipient shall be filed with the Clerk of the Court on or before one hundred ten (110) days from the entry of this Order.

20.     A hearing (the "Fairness Hearing") shall be held before the undersigned at _____ a.m./p.m. on _____ _____, 2012 in the United States District Court for the District of Maryland - Northern Division, Garmatz Courthouse, 101 W. Lombard Street, Baltimore, MD 21201, to consider the fairness, reasonableness and adequacy of the proposed Settlement, the entry of any final order or judgment in the case, petitions for attorney fees and for reimbursement of expenses by Representative Plaintiff's counsel, and other related matters.  This hearing may be postponed, adjourned or continued by order of the Court without further notice to the Classes.

21.    Any Class Member who does not opt-out of the Settlement may appear at the Fairness Hearing in person or by counsel, if any appearance is filed and served as provided in the Notices, and will be heard to the extent allowed by the Court in support of, or in opposition to, the fairness, reasonableness and adequacy of the proposed Settlement, the entry of any final order or judgment in the case, petitions for attorney fees and for reimbursement of expenses by Representative Plaintiff's counsel, or other related matters. Provided, however, that no person shall be permitted to intervene or otherwise be heard in opposition to the proposed Settlement, and, if approved, the judgment entered thereon, or to the requested award of attorney's fees and reimbursement of expenses, and no papers or briefs submitted by any person shall be accepted or considered by the Court unless, not later than ninety (90) days after entry of this Order, such person has:

(a)    filed with the Clerk of the Court a notice of such person's intention to intervene or otherwise appear together with a statement that indicates the basis for such intervention or opposition along with copies of any papers that the objector or intervenor intends to present to the Court in support of the objection or intervention;

(b)    served copies of such notice, statement and documentation, together with copies of any other papers or briefs that such person files with the Court, either in person or by mail, upon Representative Plaintiff's counsel, and upon Defendant's counsel at the following addresses:

To Representative Plaintiff's Counsel:

Cory L. Zajdel, Esq.
Z LAW, LLC
10811 Red Run Blvd., Suite 204
Owings Mills, MD 21117

To Defendant's Counsel:

Gerard J. Gaeng
Rosenberg | Martin | Greenberg, LLP
25 South Charles Street, Suite 2115
Baltimore, Maryland 21201

(c)    otherwise complied with the Agreement and Class Notice for purposes of

such hearing.

22.    Any Class Member who does not object in the manner provided in this Order shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness or adequacy of the proposed Settlement as incorporated in the Agreement, to the award of attorney fees and costs to Class Counsel and other related matters under consideration at the Fairness Hearing.

23.    Pending the Fairness Hearing and a final determination of whether the Settlement should be approved, all potential members of the Classes certified preliminarily in this Order are hereby barred from commencing or prosecuting against any of the Released Parties any action, arbitration or proceeding in any court, arbitration forum or other tribunal asserting Released Claims, either directly, on a representative basis, or in any other capacity.

24.    Pending the Fairness Hearing and a final determination of whether the Settlement should be approved, all proceedings in this Action other than those described herein (or other proceedings related to the effectuation of the Settlement) are hereby stayed.

25.    If the proposed Settlement is not finally approved or implemented or if the Settlement is terminated for any reason whatsoever, the Settlement, and all proceedings in connection with the Agreement, including without limitation, all orders entered in connection with the proposed Settlement shall be without prejudice to the rights of the settling Parties, and all Orders issued pursuant to this proposed Settlement shall be vacated.  In such an event, the Settlement and all negotiations, proceedings and statements made in connection with the proposed Settlement, including without limitation the Agreement, shall be null, void and without effect.  Any settlement class that has been certified prior to termination or disapproval of the Settlement shall automatically be decertified at such termination or disapproval, without prejudice to Representative Plaintiff's right to file a new motion for class certification.  No

evidence relating to settlement negotiations, proceedings, documents, or statements shall be used in any manner or for any purpose in any subsequent proceedings in this Action, or in any other proceeding between the Parties, and this Action shall revert to its status immediately prior to the execution of the Agreement, including but not limited to its status as a putative class action. Notwithstanding the foregoing, the provisions of Section 20(d) and 20(e) of the Agreement shall (a) survive any termination of the Agreement; (b) bind the Parties and the Settlement Administrator and their agents and counsel following termination of the Agreement; and (c) be enforceable by the Court following termination of the Agreement.

Dated: _____ _____, 2012.


                                        _____
                                        Benson Everett Legg
                                        United States District Judge